Filed 10/6/20  Harris v. Eslinger CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BARTON HARRIS et al.,<br><br>      Plaintiffs, Cross-defendants, and Respondents,<br><br>      v.<br><br>RODERICK ESLINGER et al.,<br><br>      Defendants, Cross-complainants, and Appellants. | D075513<br><br><br>(Super. Ct. No. 37-2017-00029151-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Mendel, Judge.  Reversed in part; affirmed in part; remanded with directions.

Smylie & Van Dusen and Scott A. Smylie for Defendants, Cross-complainants, and Appellants.

Law Offices of Mark F. Claasen and Mark F. Claasen for Plaintiffs, Cross-defendants, and Respondents.

I.

INTRODUCTION

Plaintiffs Barton and Deborah Harris (the Harrises) sued their neighbors, defendants Roderick and Laurralyn Eslinger (the Eslingers). In their complaint, the Harrises brought claims for quiet title and declaratory relief in which they sought recognition of an easement by implication or by necessity over a portion of the Eslingers' property to permit the Harrises to obtain vehicular access to their garage (Garage Easement),[1] among other claims. The Eslingers filed a cross-complaint against the Harrises seeking to quiet title to the area of the Eslingers' property over which the Harrises sought an easement and asserting a claim for nuisance against the Harrises based in part on the Harrises' alleged obstruction of a pedestrian easement in favor of the Eslingers' property.

After holding a trial and issuing a minute order detailing its rulings in the case, the trial court entered a judgment in favor of the Harrises on their claims for quiet title and declaratory relief and granted the Harrises the Garage Easement over the Eslingers' property. On the cross-complaint, the court found against the Eslingers on their claims for quiet title and nuisance.

---

[1]     We use the term "Garage Easement" to distinguish this easement from a separate recorded easement on the Eslingers' property, which we describe in part II, *post* and refer to as the Vehicular Easement. As described in footnotes 4 and 6, *post*, we have included two maps of the relevant properties as Exhibits 1 and 2 of the Appendix of this opinion.

We conclude that a prior action between the Harrises' immediate predecessors in title and the Eslingers has preclusive effect and bars the Harrises' quiet title and declaratory relief claims. Thus, we conclude that the trial court erred in granting the Harrises the Garage Easement. This conclusion renders moot the Eslingers' cross-complaint seeking to quiet title to the same area. We further conclude that the Eslingers have not identified any basis for reversing the trial court's finding against them on their nuisance claim. Accordingly, we reverse in part, affirm in part, and remand with directions.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Creation of the common interest development at issue*

In 2001, Kelly Carmona owned an undivided lot, with a house in the front of the lot on West Point Loma Boulevard and a second house in the back, adjacent to a public park called Robb Field. That year, Carmona subdivided the property and created a common interest development consisting of two properties. The rear lot became 4820 West Point Loma Boulevard ("rear lot" or "Harrises' property"), and the front lot became 4822 West Point Loma Boulevard ("front lot" or "Eslingers' property").

B. *The recorded easements*

As a part of the creation of the common interest development, Carmona recorded an easement over a portion of the front lot, in favor of the rear lot. The easement runs the length of the front lot on its west side and is approximately eight feet wide; it provides

3

vehicular access to the rear lot from West Point Loma Boulevard ("Vehicular Easement").

Carmona also recorded an easement in favor of the front lot that runs the length of the rear lot on its west side and is approximately four feet wide. ("Walkway Easement"). The Walkway Easement provides the front lot with pedestrian access over the rear lot and through a gate to Robb Field.

C. *The CC&Rs*

Carmona also recorded a declaration of Covenants, Conditions and Restrictions (CC&Rs) to govern the common interest development.

D. *The ownership of the properties*

In 2001, Carmona sold the rear lot to Sheri Guseman. Guseman in turn sold the rear lot to Gary and Marjorie Rufener in April 2012. In October 2012, the Rufeners sold the rear lot to the Harrises.

In October 2002, Carmona sold the front lot to the Eslingers.[2]

E. *The Guseman Action*

In 2003, the Eslingers built a fence to enclose their backyard. Soon thereafter, Guseman filed a lawsuit against the Eslingers alleging that their fence interfered with her ability to park her car in her garage and obstructed her use of the easement over the Eslingers' property. In June 2004, Guseman and the Eslingers settled the lawsuit. As

---

[2]    While the deed lists Roderick Eslinger, a married man, as the owner of the front lot, the trial court's settled statement states that the Eslingers purchased the home.

part of the settlement, Guseman agreed to pay the Eslingers $15,000 and the Eslingers agreed to move a two foot by two foot section of their fence to provide Guseman easier vehicular access to her garage. Guseman dismissed her action, *without* prejudice.

F. *The Rufener Action*

In April 2012, the Rufeners, who purchased the rear lot from Guseman, filed a lawsuit (Rufener Action) against the Eslingers alleging causes of action for nuisance, declaratory and injunctive relief, and intentional and negligent interference with prospective business advantage. As relevant to this appeal, the Rufeners alleged that the Eslingers had "constructed a fence that obstructs the Rufeners' use of an access easement established to provide automobile access to a garage located on the Rufeners' . . . property." After selling their property to the Harrises in October 2012,[3] the Rufeners dismissed the Rufener Action in February 2013, *with* prejudice.

G. *This action*

In August 2017, the Harrises filed this action against the Eslingers. The Harrises brought causes of action for quiet title and declaratory relief in which they sought an easement over a triangular shaped portion of the northwesterly corner of the Eslingers' property, which the Harrises refer to in their complaint as the "Access Area." The Harrises alleged, "As a result of [the Eslingers'] current encroachment over the easement

---

3     As discussed in part III.A.2.b, *post*, the Rufeners provided the Harrises with notice of the Rufener Action and informed the Harrises that the Rufeners intended to dismiss the action. The Rufeners also informed the Harrises that "if the [Rufeners] drop[ ] the lawsuit[,] that future efforts of the [Harrises] to retain access to the areas that hinder the parking and access to the garage will be almost impossible and may be lost forever."

across the Access Area, the Harrises do not have the necessary access to park vehicles in their garage, rend[er]ing the garage useless as a parking structure . . . ."  The Harrises claimed that they were entitled to an easement across the "Access Area," by way of implication or necessity, to provide vehicle access to the Harrises' garage.[4]

The Harrises' also brought a nuisance claim based on the Eslingers' alleged obstruction of the Access Area and interference with the Harrises' use of their property.

The Eslingers filed a cross-complaint against the Harrises in which they brought a cause of action to quiet title to the disputed Access Area, as well as a nuisance cause of action.  In their quiet title claim, the Eslingers denied that an "implied easement or easement by necessity was ever created," and maintained that "even if the alleged easement was created, the easement ha[d] been extinguished by adverse possession."  In their nuisance cause of action, the Eslingers alleged that the Harrises had violated various provisions in the CC&Rs, including blocking access to the Walkway Easement and illegally converting their garage to living space.

H.  *The trial court's ruling*

In November 2018, the trial court held a bench trial on the complaint and cross-complaint at which all parties appeared in pro per.

---

[4]     As noted in part I, *ante*, we refer to the Harrises' requested easement as the Garage Easement.  The Harrises attached a map to their complaint that depicts the location of the requested easement.  We have attached that map as Exhibit 1 to the Appendix of this opinion.  The area that the Harrises sought as the Garage Easement is the triangular shaded portion of the map with the words "Access Area" written on it, just below the words "Existing Concrete Driveway."

After the trial, the trial court issued a minute order detailing its ruling in the case. As discussed in greater detail in part III.A, *post*, the trial court rejected the Eslingers' contention that the doctrine of res judicata barred this action. The court found that an easement by implication and/or necessity existed in favor of the Harrises' property over the Eslingers' property to provide vehicular access to the Harrises' garage. The court also concluded that the doctrine of adverse possession was "inapplicable," and that the Eslingers could not prevail on the quiet title cause of action in their cross-complaint. Based on these findings, the court granted the Garage Easement in favor of the Harrises. Finally, the trial court found against both parties on their respective nuisance causes of action.

I. *The judgment*

The trial court entered a judgment, consistent with its minute order, in January 2019. The judgment states in relevant part:[5]

> "1. On [the Harrises'] First and Second Causes of Action, the Court finds in favor of the [Harrises] for the reasons set forth in its Minute Order, and hereby rules and declares that there is an easement by implication, and/or by necessity, in favor of Unit 2, located at 4820 West Point Loma Blvd., San Diego, California across Unit 1 located at 4822 West Point Loma Blvd., San Diego, California, as those Units are identified on the certain Condominium Plan recorded in the Office of the County Recorder of San Diego County, California on March 20, 2001 as File No. 2001-0160382 of Official Records.
>
> "2. As this judgment establishes the existence of an easement affecting title to Units l and 2, it is entitled to be recorded with the County Recorder. . . .

---

5   We quote the judgment at length in light of the detailed disposition in this case.

7

"3. The easement granted is for ingress and egress to the garage in the home located on Unit 2 over that portion of Unit I described as follows:

> A triangular section beginning at a point on the easterly line of the existing 'Access Easement' as shown on the Condominium Plan, that is 10 feet southwest of the boundary line between Units 1 & 2, then running diagonally in a north-easterly direction to a point on the said boundary line that is 8 feet from the point where the easterly line of the existing 'Access Easement' intersects the boundary line between Units 1 & 2, and then to the point of beginning, as shown on the shaded portion of the map attached as Exhibit 2.[6]

"4. The Court orders that the Eslingers['] fence be moved from its existing location to the diagonal line of the easement defined above. The Harrises are to pay for the moving of the fence, and may designate a contractor of their choice to move the fence. Once the Judgment is final, the Eslingers shall give the contractor access to their property for purposes of moving the fence.

"5. Having found an easement to exist the Eslingers' request in the First Cause of Action of their Cross-complaint to quite title is denied.

"6. The Court finds that the Harrises have not established a nuisance based on allegations of inappropriate or harassing behavior on the part of the Eslingers as alleged in their Third and Fourth Causes of Action, and denies any relief in the form of damages or injunction.

"7. The Court finds that the Eslingers[ ] have not established a nuisance in violation of the CC&R's as alleged in the Second Cause

---

6    We have attached this map, Exhibit 2 of the court's judgment, as Exhibit 2 of the Appendix to this opinion. We refer to the "Access Easement" bordering Unit 1 (U-1) (the Eslingers' property) on the map as the Vehicular Easement. We refer to the "Access Easement" bordering Unit 2 (U-2) (the Harrises' property) on the map as the Walkway Easement. We refer to the triangular section of land in the northeasterly corner of U-1 on the map as the Garage Easement.

8

of Action of their Cross-complaint and denies any relief in the form of damages or injunction. This includes, the claims based on the existing arbor and storage shed, the locking of the rear gate, the Harrises parking in the [Walkway] Easement area, and allegations of inappropriate or harassing behavior on the part of the Harrises."

J. *The appeal*

In February 2019, the Eslingers timely filed this appeal.[7]

K. *Settled statement*

While this appeal was pending, the trial court conducted various proceedings pertaining to the issuance of a settled statement.[8] In September 2019, the trial court issued the operative supplemental settled statement.

III.

DISCUSSION

A. *The Harrises' causes of action for quiet title and declaratory relief based on an easement by implication and/or necessity are barred by the doctrine of res judicata*

The Eslingers claim that the Harrises' causes of action for quiet title and declaratory relief based on an easement by implication and/or necessity are barred by the doctrine of res judicata.

---

[7] After entry of the January 2019 judgment and the filing of the February 2019 notice of appeal, the trial court issued an order in May 2019 entitled "*AMENDED* Findings & Order After Trial and Statement of Decision." The trial court lacked jurisdiction to issue such an order. (See, e.g., *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1267 ["Generally, the filing of a notice of appeal 'divests the trial court of further jurisdiction in the cause' "].) Accordingly, we disregard the May 2019 order in its entirety. However, nothing in the amended findings is material to the issues that we resolve in this appeal.

[8] The case was tried without a court reporter.

9

1. *Governing law and standard of review*

    a. *Overview of claim preclusion under the doctrine of res judicata*

The " ' "primary aspect" ' " of the doctrine of res judicata is commonly known as " 'claim preclusion.' "[9] (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788 (*Boeken*). In *DKN*, *supra*, 61 Cal.4th 813, the Supreme Court summarized the doctrine of claim preclusion as follows:

> "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties [or those in privity] (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Id.* at p. 824.)

Where applicable, claim prelusion " 'bars claims that *could have been* raised in the first proceeding regardless of whether or not they were raised.' " (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1164; *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803 (*Samara*) [discussing claim preclusion and stating "[t]he bar applies if the cause of action could have been brought, whether or not it was actually asserted or decided in the first lawsuit"].) In *Mycogen Corp. v. Monsanto Co.* (2002)

---

9       Throughout their brief, the parties refer to "res judicata." It is clear that they are referring to the doctrine of *claim* preclusion, because this case presents no possible application of the doctrine of *issue* preclusion, i.e., collateral estoppel, which is occasionally referred to as a "secondary aspect" of the doctrine of res judicata. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN*).) Thus, when we use the term "res judicata" in this opinion, we are referring to the claim preclusion aspect of the doctrine.

10

28 Cal.4th 888 (*Mycogen*), the Supreme Court explained the reason for this aspect of claim preclusion:

> " ' "Res judicata [claim preclusion] precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata [claim preclusion] benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' [Citation.]" (*Id.* at p. 897.)

### b. *Same cause of action*

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' [Citation.] Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests." (*Boeken*, *supra*, 48 Cal.4th at p. 797.) Thus, " '[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Id.* at p. 798.)

11

c. *Same party or party in privity*

In *Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 672–673 (*Cal Sierra*), the Court of Appeal explained the concept of "privity," for purposes of claim preclusion:

> " 'As applied to questions of preclusion, privity requires the sharing of "an identity or community of interest," with "adequate representation" of that interest in the first suit, and circumstances such that the nonparty "should reasonably have expected to be bound" by the first suit. [Citation.]  A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's " ' "virtual representative" ' " in the first action. [Citation.]' [Citation.]

> " ' "This requirement of identity of parties or privity is a requirement of due process of law." [Citation.]  "Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the losing party in the first action. [Citations.]  The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication. . . . [¶] A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance," for example, by controlling it. [Citations.]  Furthermore, privity appertains "against one who did not actually appear in the prior action . . . where the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for a nonparty." [Citation.]' [Citation.]" (*Id.* at pp. 672–673.)

"The most common form of privity is succession in interest.  One who succeeds to the interests of a party in the property or other subject of the action, after its commencement, is bound by the judgment with respect to those interests in the same manner as if he or she were a party." (7 Witkin, Cal. Procedure (5th Ed. 2020) Judgment § 460; accord *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 689 (*Consumer Advocacy*) ["In the context of a res judicata

12

determination, privity ' "refers 'to a mutual or successive relationship to the same rights of property' " ' "].)

####    d.   *Final judgment on the merits*

California law is clear that "[a] dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91 (*Kim*); see, e.g., *Boeken*, *supra*, 48 Cal.4th at p. 793 [citing cases]; see, e.g., *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 821 (*Torrey Pines Bank*) [" 'The bar raised by a dismissal with prejudice is equal, under the doctrine of res judicata, to the bar raised by a judgment on the merits' "].)  " 'The statutory term "with prejudice" clearly means the plaintiff's right of action is terminated and may not be revived. . . .  [A] dismissal with prejudice . . . bars any future action on the same subject matter.' " (*Boeken*, *supra*, at p. 793.)

####    e.   *Standard of review*

"The question of the applicability of claim preclusion or issue preclusion is one of law to which we apply a de novo review." (*Samara*, *supra*, 8 Cal.App.5th at p. 803; see *In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1341 ["We review de novo a trial court's ruling on the application of the doctrine of res judicata or claim preclusion"].)

###   2.   *Factual and procedural background*

In their trial brief, the Eslingers claimed that the Harrises could not establish their claim to an easement, "regardless of the theory," because such a claim was barred by the doctrine of res judicata, i.e., claim preclusion.  The Eslingers argued that the Rufener

13

Action involved the same primary right as is at issue in this case, namely, the Eslingers' purported obstruction of an "access easement," preventing automobile access to the Rufeners' garage. The Eslingers argued further that the Harrises were "clearly in privity," with the Rufeners as "subsequent title holders to the disputed property," with notice of the Rufener Action.[10] Finally, the Eslingers argued that the Rufener Action was dismissed *with* prejudice, which constitutes a final judgment on the merits for purposes of res judicata.

The Harrises filed a trial brief in which they contended that their "easement claim" was not barred by the doctrine of res judicata. In support of this contention, the Harrises argued that they were not in privity with the Rufeners.[11] The Harrises reasoned in part:

> "There was no unity of interest, and the Harrises were not represented in the Rufeners' case. That the Rufeners disclosed the lawsuit and opined that their dismissal could impact the Harrises in the future does not establish privity. Mr. Rufener was getting rid of a problem situation, and making overly broad disclosures to the buyers of potential ramifications to avoid potential liability. That does not constitute res judicata. Moreover . . . the Rufeners did not raise the issues of easement by implication or necessity, which is what the Harrises are claiming. The Harrises had no reason to expect that what the Rufeners did with their claims had any impact

---

[10] In support of this contention, the Eslingers referred to addenda to the Harris-Rufener purchase agreement in which the Rufeners' disclosed the Rufener Action to the Harrises. (See III.A.2.b, *post*.)

[11] The Harrises also argued that the Eslingers "should not be allowed to present any evidence in support of this affirmative defense" because the Eslingers allegedly had failed to state facts in support of their res judicata defense in various discovery responses. The trial court did not discuss this argument in its ruling and the Harrises have not asserted it on appeal as an alternative ground to affirm the judgment. Thus, we do not consider it.

14

on the existence of an easement.  The doctrine simply does not apply here."

### a.  *The Eslingers' request for judicial notice*

The Eslingers filed a request for judicial notice in which they asked the court to take judicial notice of the April 17, 2012 complaint in the Rufener Action, the October 22, 2012 Rufener-Harris grant deed, and the February 19, 2013 dismissal with prejudice in the Rufener Action.

### b.  *The trial court's settled statement*

In its settled statement, the trial court took judicial notice of all of the documents referenced in the Eslingers' request for judicial notice.  The court stated that it was admitting in evidence various exhibits "related to Res Judicata," including:  Trial Exhibit No. 98 (complaint in the Rufener Action), Trial Exhibit No. 56 (dismissal with prejudice of the Rufener Action), Trial Exhibit No. 86 (Harris-Rufener grant deed).  The court further stated:

> "The Harris[es] learned that Mr. and Mrs. Rufener had purchased the rear property from Ms. Guseman and that they filed suit against the Eslingers to gain access to the garage by establishing an easement. Mr. Harris testified that when he was negotiating with the Rufeners to buy the rear home, that the Rufener[s] told him all about the [Rufener Action].  The Rufeners indicated to Mr. Harris that they had become weary of the litigation, and just wanted to sell the rear property and be on their way.  The Rufeners told Mr. Harris that soon they would dismiss their case and that this could affect the Harris[es'] legal rights vis-à-vis the easement allowing access into his garage.  The Harris[es] purchased the rear property anyway.  The Rufener[s] ultimately dismissed their case against the Eslingers."

15

The trial court's settled statement also provides, "Ms. Harris received and signed the August 2012, addendum to the Rufener-Harris purchase contract for the property . . . ."  The addendum states in relevant part as follows:

> "[The Harrises] acknowledge[ ] that the [Rufeners] ha[ve] filed a law[suit] against the [Eslingers] regarding the fence installed between 4820 and 4822 W[.] Point Loma Blvd.  This fence hinders access and parking to 4820 [West Point Loma Blvd.].
>
> "[The Harrises] acknowledge[ ] that if the sale of the property from [the Rufeners] to [the Harrises] is completed, [the Rufeners] may be dropping this lawsuit.
>
> "[The Harrises] acknowledge[ ] if the [Rufeners] drop[ ] the lawsuit that future efforts of the [Harrises] to retain access to the areas that hinder the parking and access to the garage will be almost impossible and may be lost forever.
>
> "As more specifically set forth in the civil action [Rufener Action]."

In its settled statement, the court also stated that Barton Harris testified concerning the following:

> "Changes in the property since he and his wife have purchased it have made the situation worse.  By the time he and his wife filed this lawsuit, the next[-]door neighbor, Mr. Westin, who lived adjacent to the long driveway from the street, moved his own fence to the edge of his property line.  This pinched the 'maneuver' space even more, creating even greater difficulty."

c.  *The trial court's minute order*

In its minute order, the trial court explained its determination that the doctrine of res judicata did not apply in this case as follows:

> "The Doctrine of Res Judicata does not apply.  [The] Eslinger[s] moved the Court in limine to dismiss the Complaint based on the doctrine of res judicata.  Res judicata operates to preclude a new lawsuit if an old lawsuit had (1) the same parties, or the parties of the

16

old and new suit were in 'privity', (2) the same issues are presented in both cases, and (3) the older suit was resolved 'on its merits', [citations]. The Court finds that the doctrine does not apply. First, the parties are different among the [Guseman Action][12] and the [Rufener Action] and the current case . . . . There is an argument for privity in that the Harrises stood in the same position as both Ms. Guseman and Mr. Rufener as the owners of the same home. But the court need not consider that argument in that [the Eslingers] have not satisfied the second and third elements of res judicata.

"As to the second element requiring the same issues, while the overarching issue is the same, namely, vehicular access into a garage, nevertheless by the time of the instant suit the physical conditions on the properties in question had changed, primarily by the next[-]door neighbor[ ]Mr. Westin[ ] moving his fence to the edge of his property line during the Harris[es]' time of ownership, increasing the difficulty in the Harrises entering their garage. The Court finds that the change in these physical circumstances significantly changes the factual issues such that older cases and the instant case do not present the same issues [vis-à-vis] ingress and egress of the garage.

"Finally, the [Guseman Action] was resolved through *settlement* with the assistance of Judge Meyer, and the [Rufener Action] was dismissed after the Rufeners agreed to pay the Eslinger[s'] attorney's fees. The Ruf[e]ners were in the midst of selling their property to the Harrises and essentially abandoned their lawsuit. In neither case did a [j]udge or [j]ury hear the evidence and decide the case on its merits as required by element three. In conclusion, while there is an argument for privity among the parties of the three cases, the doctrine of res judicata is not applicable here, the [Eslingers] having failed to prove primary elements of the doctrine; that the same issues were involved and that the older cases were resolved on their merits."

---

12      On appeal, the Eslingers seek the application of the doctrine of res judicata solely with respect to the Rufener Action.

17

### 3. *Application*

We consider each of the elements of claim preclusion, and conclude that the Eslingers established each element as a matter of law.

#### a. *Same cause of action*

With respect to the "same cause of action" element (*DKN*, *supra*, 61 Cal.4th at p. 824), as the trial court recognized, both the Rufener Action and this action involve "vehicular access into a garage." In the complaint in the Rufener Action, the Rufeners alleged that the Eslingers "constructed a fence that obstructs the Rufeners' use of an access easement established to provide automobile access to a garage located on the Rufeners' . . . property."[13] In their complaint in this case, the Harrises allege that the Eslingers constructed a fence that constitutes an "encroachment over the easement across the Access Area,"[14] and that, as a result "the Harrises do not have the necessary access to park vehicles in their garage." Thus, the Eslingers' purported obstruction of the owners of the rear lot's property right of vehicular access to their garage formed the basis of both suits. Because the two actions involve the same alleged injury, the same cause of action element of the doctrine of claim preclusion is satisfied. (See *Boeken*, *supra*, 48 Cal.4th at

---

[13] In its settled statement, the trial court states, "[T]he focus of the [Rufener Action] was . . . that the Eslingers' backyard fence made it impossible for the Rufeners to get their cars into their own garage over what was intended or implied as an easement to allow them to do so." (Italics omitted.)

[14] In their complaint, the Harris's referenced a map of the condominiums currently owned by the Harrises and the Eslingers and stated that a "triangular section of Unit 1 [owned by the Eslingers] is referred to as the 'Access Area.' " As noted in footnote 4, *ante*, that map is attached as Exhibit 1 of the Appendix to the opinion.

18

p. 798 [" ' "a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right" ' "].)

The trial court concluded that the "same cause of action"[15] element (*DKN*, *supra*, 61 Cal.4th at p. 824) was not met because a third party, Westin, had moved his "fence to the edge of his property line during the Harris[es'] time of ownership, increasing the difficulty in the Harrises entering their garage." However, as the Eslingers argue in their brief, this fact is "irrelevant to the legal inquiry."

For purposes of the "same cause of action" element (*DKN*, *supra*, 61 Cal.4th at p. 824), a court looks to whether the causes of action in the two cases arose out of the same " 'antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests.' " (*Boeken*, *supra*, 48 Cal.4th at p. 797.) As applied here, the Rufener Action and this action both involve the question of whether the Eslingers' fence breached the owners of the rear lot's property right of vehicular access to their garage. Whether a *third party* made it more difficult for the Harrises to access their garage is irrelevant to that question. Neither the trial court, nor the Harrises, cited any authority that would support the proposition that an external factor, such as Westin having moved his fence, has any relevance in determining the cause of action at issue in the Rufener Action and this action, nor has our own research uncovered such support.

---

15    The trial court incorrectly referred to this element as the "same issues" requirement.

Further, to permit a party, such as the Harrises, to avoid a prior judgment merely by demonstrating that an external factor has altered the *effect* of the prior judgment on the party, would be to undermine the primary purposes of the doctrine of claim preclusion, i.e., to promote the stability of judgments and to prevent relitigation of resolved issues. (See *Mycogen*, *supra*, 28 Cal.4th at p. 897 [describing purposes of the doctrine].) Further, to subject defendants such as the Eslingers to serial litigation over the same claim would be to undermine the " 'fundamental policy of the doctrine [of res judicata], which gives stability to judgments after the parties [or their privies] have had a fair *opportunity* to litigate their claims and defenses.' " (*Estate of Gump* (1991) 1 Cal.App.4th 582, 608, italics added.) The trial court thus erred in relying on the fact that a third party, Westin, had moved his fence closer to the Harrises' property line in concluding that the doctrine of claim preclusion did not apply.

### b.  *Final judgment on the merits*

The trial court also erred in concluding that the Rufener Action did not have res judicata effect because the Rufeners "essentially abandoned their lawsuit," and "a [j]udge or [j]ury [did not] hear the evidence and decide the [Rufener Action] on its merits as required by element three [i.e., a final judgment on the merits]."

As discussed above, California law is clear that a dismissal *with* prejudice constitutes a final judgment on the merits for purposes of claim preclusion. (See *Torrey Pines Bank*, *supra*, 216 Cal.App.3d at p. 820 ["Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again"].) California law does *not* require that a judge or jury hear evidence and make an

20

actual adjudication of the merits of the prior litigation. As the Supreme Court in *Kim*, *supra*, 9 Cal.5th 73, explained:

> " 'Retraxit' describes the particular application of claim preclusion to a claim that has been dismissed with prejudice. [Citation.] A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim. [Citations.]" (*Id.* at p. 91.)

It is undisputed that the Rufener Action was dismissed *with* prejudice. Indeed, the record indicates that the Rufener Action was dismissed in accordance with a settlement agreement pursuant to which the Rufeners agreed to: dismiss the Rufener Action with prejudice, release "any and all . . . potential claims," against the Eslingers, and pay the Eslingers a sum of money. California law plainly gives res judicata effect to a dismissal entered under these circumstances. (*Kim*, *supra*, 9 Cal.5th at p. 91.)

It is for that reason that the Harrises' *sole* argument against the application of claim preclusion in their respondents' brief is not persuasive.[16] Citing *Aspeitia v. California Trust Co.* (1958) 158 Cal.App.2d 150 (*Aspeitia*) and *Campanella v. Campanella* (1928) 204 Cal. 515 (*Campanella*), the Harrises claim that "it is clear that the case [the Rufener Action] was not dismissed 'on the merits' and should not therefore present a res judicata bar to the Harrises['] suit."

---

[16]  In addition to this argument, in their respondents' brief, the Harrises also refer to the trial court's reasoning regarding the "other two criteria of res judicata and the case facts," and state that no "further clarification is made here." We have concluded that the trial court's reasoning on the two other elements of res judicata, which the Harrises refer to as the "same parties or parties in privity," and the "same issues" criteria, is unpersuasive, for the reasons stated in the text.

21

In *Aspeitia*, a trial court sustained the defendant's demurrer to a supplemental complaint with leave to amend. (*Aspeitia*, *supra*, 158 Cal.App.2d at p. 152.) The trial court "advised plaintiffs' counsel that a new and separate action should be commenced," and, pursuant to a "stipulation, an order was made dismissing the supplemental complaint." (*Ibid.*) While "the order dismissing the supplemental complaint originally stated it was 'with prejudice,' . . . at a later time those words were stricken on the ground their insertion in the order was a clerical error." (*Id.* at p. 153.)

Thereafter, the plaintiff filed a new action, which contained substantially the same allegations as contained in one of the counts from the prior action's supplemental complaint. (*Aspeitia*, *supra*, 158 Cal.App.2d at pp. 152–153.) The defendant claimed that the order dismissing the complaint constituted a bar to the later suit, and the trial court rejected that argument. (*Id.* at p. 153.) On appeal, the *Aspeitia* court affirmed, reasoning:

> "A mere statement that a judgment of dismissal is 'with prejudice' is not conclusive. 'It is the nature of the action and the character of the judgment that determines whether it is res judicata. The intention of the court to make a determination on the merits may be important, but if the judgment is clearly not on the merits, the court's intention is immaterial. A dismissal without prejudice, on the other hand, is not a bar to another action by the plaintiff on the same cause. In other respects, however, it has the effect of a final judgment in favor of the defendant, for it terminates the action and concludes the rights of the parties in that particular action. . . . An order of dismissal containing no statement whatever that it is made without prejudice is not a bar to a subsequent action, unless the record shows that there was an actual determination on the merits. [Citation.]' [Citation.] The record does not show that there was an actual determination of the prior action on the merits. The order of dismissal of the supplemental complaint in the prior action is not a bar to this action." (*Ibid.*)

22

*Aspeitia* stands for the proposition that where the record demonstrates that a trial court intended to enter a dismissal *without* prejudice to facilitate the filing of a new complaint, the trial court's error in stating that the dismissal was *with* prejudice will not cause the dismissed prior action to have preclusive effect. (*Aspeitia*, *supra*, 158 Cal.App.2d at pp. 152–153.) In this case, however, there is nothing in the record to support a finding that the dismissal of the Rufener Action was intended to be *without* prejudice. On the contrary, the record is clear that the trial court in the Rufener Action entered a dismissal *with* prejudice, in accordance with the parties' and the court's express intent.[17] Further, there is nothing in *Aspeitia* that undermines well settled California law, recently reaffirmed by our Supreme Court in *Kim*, that a dismissal *with* prejudice constitutes a final judgment on the merits for purposes of the doctrine of claim preclusion.

*Campanella*, *supra*, 204 Cal. 515, also provides no support for the Harrises' claim that the dismissal of the Rufener Action with prejudice had no preclusive effect. In *Campanella*, the trial court dismissed a case pursuant to a " ' "motion to strike." ' " (*Id.* at p. 519.) The *Campanella* court stated that "[i]t is clear that the judgment is not res judicata," (italics omitted) since "[t]he judgment roll not only fails to show a ruling upon the merits but discloses that no such ruling was made." (*Id.* at 520.) The *Campanella* court reasoned:

---

17     The Rufeners'-Eslingers' settlement agreement in the Rufener Action expressly specifies that the Rufeners would "file a dismissal of this action with prejudice."

" 'When a case is dismissed without evidence having been offered[,] it is error to render judgment on the merits. There is nothing before the court on which to base any findings determinative of the issues. The absence of proof on either side could not involve a judicial determination of the merits of the controversy. [Citations.] There must have been a right adjudicated *or released* in the first suit to constitute the judgment a bar or an estoppel. [Citations]." (*Id.* at pp. 520–521, italics added.)

*Campanella* thus stands for the proposition that a judgment that is *not* on the merits does not have preclusive effect. The *Campanella* court offered several examples of judgments that are *not* on the merits, stating, "The dismissal for the reason that plaintiff has chosen the wrong forum[,] or form of proceeding[,] or remedy, or because of defects in the pleadings or parties, or for want of jurisdiction[,] or because the suit was prematurely brought, will not operate as a bar or an estoppel to a subsequent suit." (*Campanella*, *supra*, 204 Cal. at p. 521.)

However, as the italicized words from the block quotation from *Campanella*, above, demonstrates, the *Campanella* court expressly recognized that where a right is *released* in the first suit, the prior judgment *will* have preclusive effect if the other elements of res judicata are satisfied. (*Campanella*, *supra*, 204 Cal. at p. 521.) When a party voluntarily dismisses a matter *with* prejudice, the party thereby releases the right that he is asserting in the underlying action by way of a retraxit and the judgment or order dismissing the action has preclusive effect. (See *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733–734 [stating that "[a] dismissal with prejudice is the modern name for a common law retraxit," and that "[i]t has been frequently held that a judgment or order dismissing an action, based upon a stipulation or agreement of the parties settling and

24

adjusting the claim or cause of action in suit and providing for the dismissal is a bar to another action for the same cause' "].)  As noted above, the Rufener Action was voluntarily dismissed with prejudice pursuant to a settlement agreement.  Nothing in *Campanella* undermines the preclusive effect of such a dismissal.

Accordingly, we conclude that the dismissal of the Rufener Action with prejudice pursuant to the settlement agreement and release between the Rufeners and the Eslingers constitutes a final judgment on the merits for purposes of the doctrine of claim preclusion.

> c. *Privity*

Finally, as suggested by the trial court's minute order, the Harrises were in privity with the Rufeners, "in that the Harrises stood in the same posit[i]on as . . . [the] Rufener[s] as the owners of the same home."[18]  (See *Cal Sierra*, *supra*, 14 Cal.App.5th at p. 674 [" ' "Privity" as used in the context of res judicata . . . does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation*' "].)  In *Cal Sierra*, the Court of Appeal concluded that a licensor and its licensee were in privity for purposes of claim preclusion because they stood in the same position with respect to the subject matter of the current litigation as

---

[18]     Although the trial court suggested that the Harrises and Rufeners stood in privity, the court stated that it was not required to consider the privity issue because the Eslingers had failed to satisfy the remaining elements of res judicata.  As explained in the text, we conclude that the trial court erred in determining that the Eslingers had not satisfied the same cause of action and final judgment on the merits elements.

25

they had in a prior arbitration. (*Id.* at pp. 672–674.) The *Cal Sierra* court reasoned in part:

> "The subject matter of the litigation here was the same as that at the center of the arbitration dispute: the placement of the asphalt plant and whether it infringed on [plaintiff's] mining rights. As to this issue, [licensor] and [licensee] had an identical interest; all were adversely and similarly impacted by the propriety (or impropriety) of the plant's location." (*Id.* at p. 674.)

Similarly, in this case, the Harrises and Rufeners stood in the same position and had the same relationship with the subject matter of the litigation, i.e., they both were owners of the same property contending that the Eslingers had interfered with their right to access their garage. Stated differently, the Harrises shared " 'an interest 'so similar to the [Rufeners'] interest that the [Rufeners] acted as the [Harrises'] " ' "virtual representative" ' " in the first action.' " (*Cal Sierra*, *supra*, 14 Cal.App.5th at pp. 672–673.)

Indeed, the Harrises' relationship with the Rufeners is one of the quintessential privity-forming relationships recognized under California law. (See 7 Witkin, *supra*, § 460 ["The most common form of privity is succession in interest. *One who succeeds to the interests of a party in the property or other subject of the action, after its commencement, is bound by the judgment with respect to those interests in the same manner as if he or she were a party*" (italics added)]; accord *Consumer Advocacy*, *supra*, 168 Cal.App.4th at p. 689.) Here, the Harrises succeeded to the property that was the subject of the Rufener Action, after the commencement of the Rufener Action; they are therefore bound by a judgment with respect to their interests in that property as if they

26

had been a party to the Rufener Action. Finally, it is clear that the "circumstances [are] such that the [Harrises] 'should reasonably have expected to be bound" by the first suit," since the Rufeners expressly informed the Harrises of the Rufener Action while that action was still pending, and informed "Mr. Harris that soon [the Rufeners] would dismiss their case," and that "if the [Rufeners] drop[ ] the lawsuit that future efforts of the [Harrises] to retain access to the areas that hinder the parking and access to the garage will be almost impossible and may be lost forever."

Accordingly, we conclude that the Harrises stood in privity with Rufeners for purposes of the doctrine of claim preclusion.

### d. *Conclusion*

The Eslingers established each of the elements of claim preclusion as a matter of law. Accordingly, we conclude that the Harrises' causes of action for quiet title and declaratory relief based on an easement by implication and/or necessity are barred by the doctrine of res judicata.[19]

---

[19] In light of our conclusion, we need not consider the Eslingers' arguments for reversal on the merits with respect to the trial court's judgment as to these causes of action.

In addition, the Eslingers filed an August 2019 motion for judicial notice in this court requesting that we take judicial notice of the initial grant deed from Carmona to Guseman. The Eslingers contended that the deed is relevant to one of the arguments on the merits of the easement by implication and necessity issues in the case.

In light of our conclusion that the Harrises' action is barred by claim preclusion, we deny the Eslingers' August 2019 motion for judicial notice as moot. (See, e.g., *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 255 (*Miller*) ["Because the documents are not necessary to resolve the issues before us, we deny the request for judicial notice as moot"].)

27

B. *The Eslingers' quiet title cause of action in their cross-complaint is moot*

In their brief on appeal, the Eslingers contend that the trial court erred in finding against them on their quiet title claim in their cross-complaint. We conclude that the Eslingers' quiet title claim is moot for reasons that we explain below.

1. *Factual and procedural background*

In their cross-complaint, the Eslingers claimed that there was an "actual controversy" between the Harrises and the Eslingers with respect to the disputed easement. The Eslingers alleged in relevant part:

> "An actual controversy has arisen and now exists between the Harrises and the Eslingers. The Harrises' complaint seeks to Quiet Title to an undefined 'Access Area' based upon the legal theory that because Carmona was the common owner of Units 1 and 2, and the Access Area was used to gain access to a portion of Unit 2 before Carmona sold the Units, an implied easement was created in favor of Unit 2 across the Access Area; or alternatively, because the Access Area is necessary to gain access to the garage of Unit 2, the easement is one of necessity. The Harrises' claimed interest in the Access Area is adverse to the Eslingers."

The Eslingers denied "that an implied easement or easement by necessity was ever created," and maintained that, "if the alleged easement was created, the easement has been extinguished by adverse possession." Thus, the Eslingers alleged that "an actual controversy has arisen and a real dispute . . . exists between the Harrises and the Eslingers concerning their respective rights to the property in question"

The trial court found against the Eslingers on their quiet title claim based on adverse possession.

28

2. *Application*

In order to state a claim for quiet title, the Eslingers were required to demonstrate the existence of an "adverse claim" against their property. (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 136–137 (*Colyear*); citing Code Civ. Proc., §§ 760.020, 761.020 [listing elements to quiet title claim].) As described in part III.B.1, *ante*, in their cross-complaint, the Eslingers alleged that the Harrises claimed an adverse interest in the Eslingers' property and that "an actual controversy" existed over the disputed easement across the Access Area. However, in light of our conclusion that the Harrises' claim for an easement over the Eslingers' property is barred by the doctrine of claim preclusion, the Harrises no longer have an adverse claim to the Eslingers' property and no actual controversy exists.

Under these circumstances, the Eslingers' claim for quiet title is moot. (See *Colyear*, *supra*, 9 Cal.App.5th at p. 136 [concluding that plaintiffs' quiet title claim was moot because "at the time [plaintiff] filed his [first amended complaint], there was no 'adverse claim' by [defendant] against [plaintiff's] property"], quoting *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 [" ' "although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court" ' "].)

Accordingly, we conclude that the trial court's ruling denying the Eslingers' cause of action for quiet title in their cross-complaint must be reversed as moot on the ground that the Eslingers' quiet title cause of action in the cross-complaint is moot.[20]

C. *The Eslingers have not demonstrated that the trial court erred in finding against them on their cause of action for nuisance*

The Eslingers claim that the trial court erred in finding that they had not established their nuisance cause of action. The Eslingers argue that they are entitled to reversal because they established that the Harrises committed several violations of the CC&Rs governing the condominiums, including obstructing the Walkway Easement in various ways and improperly converting their garage to living space. The Eslingers contend that these violations of the CC&Rs constitute nuisances as a matter of law based on a provision in the CC&Rs that states that any violation thereof is "declared to be and constitute[s] a nuisance."

1. T*he trial court's minute order*

In its minute order, the trial court stated the following with respect to the Eslingers' nuisance claim:

---

[20] While this appeal was pending, we solicited supplemental briefing from the parties concerning whether the Eslingers had proven one of the elements of their quiet title claim premised on adverse possession, namely, the timely payment of property taxes. Together with their supplemental brief, the Eslingers filed a May 2020 motion for judicial notice in which they requested that we take judicial notice of certain government records pertaining to this element. In light of our conclusion that the Eslingers' quiet title claim is moot, we also deny as moot the Eslingers' May 2020 motion for judicial notice. (See, e.g., *Miller*, *supra*, 41 Cal.App.5th at p. 255 [denying request for judicial notice as moot].)

30

"After viewing the scene, the Court finds that the miniscule encroachment onto the [W]alkway [E]asement by both the Harris[es]' [a]rbor and by the storage shed are insignificant and innocuous in the context of both the CC&Rs and the elements of [n]uisance. Notably the storage shed's relationship to the walkway easement is nearly the same, maybe an inch or two off, from a fence that preceded it without controversy. The Court finds that the Eslingers failed to prove Element (2)[21] that these conditions were indecent or offensive to the senses, or that they obstructed the free use of the property so as to interfere with the comfortable enjoyment of life or property. Likewise, the Court found that the Eslingers failed to prove the remaining elements of [n]uisance (3) through (8). As to these claims of [n]uisance, the Court rules against the Eslingers on their Cross[-]Complaint and in favor of the Cross[-]Defendant Harris[es]. Consequently, the prayer for . . . injunctive relief, for the Harris[es] to remove both the arbor and shed, is denied.

"The Eslingers also asserted that, under the Harris[es]' control, the lock on the gate leading to Robb [F]ield remained locked for a considerable period of time and that this constituted a nuisance. Contrariwise, the Court found the Harris[es]' explanation for the locked gate credible: The Harrises kept putting new locks on the

---

21    The trial court outlined the elements of a nuisance cause of action as follows:

"The Elements of a Private Nuisance specific to this case are as follows under CACI 2021:
"1. Plaintiffs owned the property[.]
"2. Defendants['] act created a condition or permitted a condition to exist that was indecent or offensive to the senses, or was an obstruction to the free use of the property so as to interfere with the comfortable enjoyment of life or property,
"3. The condition interfered with Plaintiffs['] use or enjoyment of their land[.]
"4. Plaintiffs did not consent to Defendants['] conduct[.]
"5. An ordinary person would be reasonably annoyed or disturbed by Defendants' conduct.
"6. Plaintiffs were harmed.
"7. Defendants['] conduct was a substantial factor in causing Plaintiffs' harm.
"8. The seriousness of the conduct outweighs the public benefit of Defendants [*sic*]."

31

gate because each successive lock would disappear, the Eslingers being the only other persons with the combinations. The Harris[es'] attorney finally reached out to the Eslingers with a mildly-stated and reasonable written request that the Eslingers please promise to care for, preserve and to not dispose of the existing lock. On that condition, the attorney promised to provide the combination to the Eslingers. The Eslingers chose to never respond, to never reassure the Harrises, to never make that promise—which would have been a very simple thing to do. Consequently, the Court finds that the gate remaining locked was not the result of wrongdoing by the Harrises, but rather the result of the Eslingers' own intransigence in refusing to respond to a gently-worded and rational request by the Harris[es'] attorney.

"The Eslingers also claimed that Ms. Harris parking her car on the walkway easement near or adjacent to her home was a nuisance. Likewise, the Court finds credible that the Harris[es] faced a Hobson's choice when it came to parking their cars. The Harrises had no access to their own garage due to the Eslingers' encroachment onto an easement by implication and necessity that had existed (latently albeit) for 20 years before Ms. Carmona's subdivision, and then after the subdivision when Ms. Guseman purchased her home and recognized and utilized the easement. The inaccessibility to their own garage, forced the Harris[e]s to park their cars on the street. But when they did so, their cars were vandalized, the Harris[es] believing the Eslingers responsible.

"When Mr. Harris parked his limousine in the walkway easement next to the Harris[es]' property the limousine was 'keyed', the Harrises believing the Eslingers responsible. If not keyed, someone in the Eslinger household would open the Eslingers' gate, it only opened outward, which would or could damage the Harris[es]' cars.

"Unable to park in their own garage, unable to park on the street, unable to park in the walkway easement adjacent to the Eslingers' property, the Harrises parked one of their cars on the walkway easement near their *own* property. And this now becomes the grist for a nuisance claim. The Court does not find, under the circumstances, that this constitutes a nuisance, but rather a problem that grew naturally and directly out of the Harrises being unable to utilize the easement by implication and necessity to park their cars in their own garage. This inability was caused by the Eslingers' act of knowingly building a fence over that easement, which if not obvious

32

to the Eslingers by the very layout and design of the property, should have been when Ms. Guseman made the Eslingers' aware of the problem before the fence was ever constructed in 2003.

"The parking situation does not constitute a nuisance and injunctive relief is denied.  Moreover, once access is restored to the Harris[es]' garage via re-establishment of the easement this issue should resolve."

In its settled statement, the trial court noted that Deborah Harris "testified that the garage is now free and clear of items and available to park their cars."

2.  *Application*

The Eslingers argue that they are entitled to reversal of the trial court's finding against them on their nuisance claim because "the[ ] *undisputed* violations of the CC&R's *mandated* a finding by the Court that the Harrises committed a nuisance."  (Italics added.)

We reject the premise of the Eslingers' argument, i.e., the existence of *undisputed* violations of the CC&Rs.  The trial court did not find that the Eslingers had established *any* violations of the CC&Rs.  On the contrary, the trial court specifically found that the Harrises' encroachments on the walkway easement as it related to the Harrises' shed and arbor were "insignificant and innocuous in the context of . . . the CC&Rs . . . ."  With respect to the lock on the gate and the entrance to the walkway easement, the trial court found that "the gate remaining locked was not the result of wrongdoing by the Harrises, but rather the result of the Eslingers' own intransigence . . . ."  Thus, the trial court did not find that the lock constituted a violation of the CC&Rs.  Finally, the trial court did not find that the Harrises had violated the CC&Rs by improperly parking their vehicles or converting their garage.

33

The Eslingers specifically eschew any review of the trial court's factual findings on their nuisance cause of action for substantial evidence, arguing that the substantial evidence standard of review "does not apply . . . to the *undisputed* facts that the Harrises[ ] violated the CC&Rs, a declared nuisance."  (Italics added.)  Further, the Eslingers have not cited all of the evidence favorable to the judgment, as would be required to present a substantial evidence claim on appeal.  (See, e.g., *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [substantial evidence review is forfeited if appellant fails to cite evidence favorable to the judgment].)

Accordingly, we conclude that the Eslingers are not entitled to reversal of the trial court's ruling on their nuisance claim since they have neither established the existence of undisputed violations of the CC&Rs nor presented a substantial evidence claim on appeal.[22]

---

[22]    In light of our conclusion in the text, we need not determine whether the Eslingers could establish their nuisance cause of action merely by proving a violation of the CC&Rs.  In *Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248 (*Mendez*), this court reviewed the elements of a cause of action for nuisance:

> "First, the plaintiff must prove an interference with his use and enjoyment of his property.  (*Ibid.*)  Second, 'the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer "substantial actual damage." ' (*Ibid.*)  Third, ' "[t]he interference with the protected interest must not only be substantial, but it must also be unreasonable" [citation], i.e., it must be "of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." ' "  (*Id.* at pp. 262–263.)

The *Mendez* court emphasized, "The requirements of *substantial damage* and *unreasonableness* are not inconsequential."  (*Mendez, supra*, 3 Cal.App.5th at p. 263.)

IV.

DISPOSITION

The judgment is reversed in part and affirmed in part and the matter is remanded to the trial court to enter a new judgment in accordance with the following.

Paragraphs one through four of the trial court's judgment, relating to the trial court's finding of an implied easement and/or easement by necessity, are reversed. The matter is remanded to the trial court with directions to enter a new judgment in favor of the Eslingers on the Harrises' quiet title and declaratory relief causes of action.

Paragraph five of the trial court's judgment, relating to the trial court's denial of the Eslingers' quiet title cause of action in their cross-complaint, is reversed as moot. The matter is remanded to the trial court with directions to enter a new judgment dismissing as moot the Eslingers' quiet title cause of action in the cross-complaint.

Paragraph six of the trial court's judgment, pertaining to the Harrises' nuisance cause of action is unaffected by this appeal. The court shall incorporate paragraph six of the trial court's prior judgment into a new judgment on remand.

Paragraph seven of the trial court's judgment, pertaining to the Eslingers' nuisance cause of action is affirmed. The court shall incorporate paragraph seven of the trial court's prior judgment into a new judgment on remand.

---

We need not determine whether a party may prove a nuisance cause of action merely be establishing a violation of CC&Rs where a provision in the CC&Rs states that any violation of the CC&Rs constitutes a nuisance.

35

The trial court shall reconsider its award of costs and enter a new costs award in its new judgment on remand.

Each party shall bear its own costs on appeal.

AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

**Appendix Ex. 1: Exhibit 2 from the Harrises' complaint**



## Appendix Ex. 2: Exhibit 2 from the trial court's judgment



SAN DIEGO, CA Document:Document-Year.DocID
2007.160382

Printed on:6/6/2011 9:46 AM

Page:8 of 9

Exhibit 2

38