Filed 3/15/24  Pomer v. Temmerman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARSHALL I. POMER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT E. TEMMERMAN, JR., et al.,<br><br>    Defendants and Respondents. | H050191<br>(Santa Cruz County<br> Super. Ct. No. 18CV00404) |

Marshall I. Pomer appeals from a judgment following the trial court's denial of his motion for summary judgment or summary adjudication and later granting of defendants Robert E. Temmerman, Jr. and Temmerman, Cilley & Kohlmann, LLP's (TCK) motion for summary judgment or summary adjudication.  As is relevant to this appeal, the parties' motions were directed at Pomer's cause of action for fraudulent concealment, in which he alleged that Temmerman and TCK, who represented him as a beneficiary of his mother's trusts, failed to disclose their attorney-client relationship with the corporate trustee.  Although the defendants failed to meet their initial burden of showing that disclosure of their relationship with the trustee was not required here, they did establish as a matter of law that Pomer suffered no resulting damage.  Because Pomer cannot prevail on a common law fraudulent concealment cause of action without proving damages, we affirm the judgment.

## I.    BACKGROUND

### A.    *The Complaint*

In February 2018, Pomer sued Temmerman and TCK, pleading causes of action for legal malpractice, fraud by concealment, breach of fiduciary duty, and dual representation.  Pomer alleged the following in the complaint.

Pomer's mother, Frances Pomer,[1] was co-trustee under the Sydney R. Pomer Revocable Trust Agreement, together with the Northern Trust Bank of Florida (Northern Trust), and the terms of the agreement gave Frances power of appointment.  Frances was also settlor and trustee of a trust under the Frances Pomer 2000 Irrevocable Trust Agreement.

On moving from Florida to California in 2005, Frances sought legal advice on matters including the selection of a new corporate trustee in California to replace Northern Trust.  After Pomer and Frances jointly consulted Temmerman and TCK, Pomer signed a written fee agreement with TCK and Frances retained separate counsel.

To Pomer, TCK recommended Borel Bank & Trust (now known as Boston Bank, the name we will use for consistency) as a successor corporate trustee, a recommendation Pomer conveyed to his mother, who then appointed Boston Bank as the new corporate trustee.  Pomer alleged, however, that TCK had a conflict of interest, given its loyalties to both Pomer and Boston Bank, and that TCK concealed the dual representation and the conflict of interest.  "Thus," Pomer alleged, "Defendants facilitated the imposition of excessive fees by Boston Bank and its attorneys."

### B.    *The Motions for Summary Judgment/Summary Adjudication*

In December 2020, Pomer moved for summary judgment against Temmerman and TCK, but confined the motion to the fraudulent concealment cause of action, specifying

---

[1] Because she shares a surname with Pomer, we refer to Pomer's mother by her first name for clarity.

that "[t]he other causes of action in the complaint are hereby forfeited."  In the alternative, Pomer sought summary adjudication of the defendants' "duty to disclose [their] concurrent representation" of Boston Bank.  The trial court denied Pomer's motion.

Several months later, Temmerman and TCK moved for summary judgment.

### 1.  *Defense Evidence[2]*

Temmerman and TCK began representing Pomer in May 2009, agreeing to represent only him and not Frances, who then obtained separate representation.  Pomer's stated objectives were:  (1) the removal of Northern Trust as co-trustee of the Sydney R. Pomer Revocable Trust because of its refusal to pay Frances's legal and living expenses; (2) the appointment of a new corporate co-trustee, protecting Frances's power of appointment; (3) assurances that Frances's legal fees and living expenses were paid moving forward; (4) reimbursement for loans Pomer had made to Frances for in-home care expenses; and (5) the eventual removal of Frances as co-trustee.

On May 19, 2009, Pomer e-mailed Christine Kouvaris, an associate attorney at TCK, mentioning two "pressing matters":  (1) Northern Trust's refusal to pay for his mother's legal and living expenses; and (2) removal of his mother as co-trustee. Kouvaris e-mailed Pomer, stating that his mother could exercise her power under the trust agreement to remove Northern Trust as trustee but would need to appoint a new corporate trustee.  Kouvaris recommended Boston Bank, and also mentioned three other banks as possible options.  After a meeting with a trust officer at Boston Bank, Pomer told Kouvaris that Boston Bank would be fine, stating also that he "might talk to a couple of other potential trustees, but I think that having a trustee that your firm knows well is important."

---

[2] We focus on the evidence provided in connection with the defendants' motion. We note, however, that the evidence presented in connection with Pomer's motion was largely indistinguishable.

When Kouvaris recommended Boston Bank to Pomer, it had recently become a TCK client. About six months later, Boston Bank succeeded Northern Trust as co-trustee and in 2011 became the sole trustee under the Sydney R. Pomer Inter Vivos Revocable Trust Agreement.[3] TCK and Temmerman never represented Boston Bank in any matter related to Pomer.

In March 2015, Pomer e-mailed Kouvaris to complain that Boston Bank was delaying distribution of trust assets, and he expressed an interest in suing the bank for breach of fiduciary duty and for reimbursement for some of the trustee and legal fees. Kouvaris replied that Temmerman felt Boston Bank's plan to seek court approval of the intended distribution was reasonable, given potential litigation due to the disinheritance of Pomer's sister. Kouvaris also disclosed that TCK represented Boston Bank in other matters and could not take an adverse position to it.[4] Pomer responded that, "in case Boston [Bank] persists in delaying," he would accept Kouvaris's offer to refer him to other counsel who could represent him in litigation against the trustee.

The next month, TCK notified Pomer that they were closing his file. In July 2015, the probate court entered an order approving attorney fees and trustee fees for Boston Bank, with the attorney fees reduced from the bank's request.

### 2. *Pomer's Evidence in Opposition*

In opposing the defense motion, Pomer disputed the following: (1) whether Boston Bank had participated in the filing of a petition seeking confirmation of Frances's power of appointment; (2) whether Kouvaris had "recommended" corporate trustees

[3] Boston Bank at some point succeeded Frances as sole trustee of her Frances Pomer 2000 Irrevocable Trust, as well.

[4] In the e-mail, Kouvaris claimed to have previously told Pomer that Boston Bank was a TCK client; in opposition to TCK's motion, Pomer declared that he first learned of the representation in the March 2015 e-mail. Kouvaris did not submit a declaration in support of the motion, and TCK provided no evidence that they disclosed their representation of Boston Bank before Kouvaris's March 2015 e-mail.

4

other than Boston Bank or just mentioned them as options; (3) whether he expressed that it was important for the trustee to have a "good relationship" with TCK or instead had stated that having a trustee that TCK "knows well" is important; (4) whether there were foreseeable adverse consequences; and (5) whether Temmerman and TCK refused to communicate with Boston Bank on Pomer's behalf.

### C.     *Judgment and Appeal*

The trial court granted the defense motion, finding that the legal malpractice cause of action was time-barred, and that Pomer could not demonstrate one or more of the elements necessary for breach of fiduciary duty and fraudulent concealment.

The trial court entered judgment for Temmerman and TCK on April 13, 2022. Pomer timely appealed.

## II.     DISCUSSION

### A.     *Legal Principles and Standard of Review*

Where a defendant has prevailed on summary judgment, " ' "we review the record de novo to determine whether [they have] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." [Citation.]' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Genisman v. Carley* (2018) 29 Cal.App.5th 45, 49 [defendant moving for summary judgment bears " 'the burden of showing that . . . one or more elements of the cause of action cannot be established' "].)  The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).)  Upon a defendant's prima facie showing of the nonexistence of a triable issue of material fact, the plaintiff "is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.)  "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in

5

favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

**B.     *Defendants' Motion*[5]**

To establish fraudulent concealment, a plaintiff must prove:  (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would, with knowledge of the concealed or suppressed fact, have acted differently; and (5) plaintiff sustained damage as a result.  (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606 (*Graham*).)

In their motion for summary judgment, Temmerman and TCK argued that the nondisclosure of their representation of Boston Bank was not a material fact, that they had no duty to disclose the representation, that they had no intent to defraud Pomer, and that Pomer suffered no damages.

The Rules of Professional Conduct, "together with statutes and general principles relating to other fiduciary relationships, 'help define the duty component of the fiduciary duty which an attorney owes to his client.' " (*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1032.)  Although a violation of the Rules of Professional Conduct "does not in itself provide a basis for civil liability," the rules " 'help define . . . the fiduciary duty which the attorney owes to his or her client.' " (*BGJ Associates v. Wilson* (2003) 113 Cal.App.4th 1217, 1227.)

---

[5] Pomer concedes that his legal malpractice and breach of fiduciary duty causes of action are time-barred by the one-year statute of limitations in Code of Civil Procedure section 340.6 for "[a]n action against an attorney for a wrongful act or omission," and he expressly asserts that those claims "are not the subject of this appeal."  Consequently, the only cause of action at issue on this appeal is fraudulent concealment, and we do not address the other causes of action, where Pomer has raised no claim of error.  (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

An attorney must provide written disclosure to a client of certain relationships with a party or witness in the same matter. At the time of the relevant actions, Rules of Professional Conduct, rule 3-310[6] provided, in relevant part: "(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where: [¶] (1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or [¶] (2) The member knows or reasonably should know that: [¶] (a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and [¶] (b) the previous relationship would substantially affect the member's representation; or [¶] (3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or [¶] (4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation. [¶] (C) A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

Pomer contends that subdivisions (B)(1) and (C)(3) of rule 3-310 both support his assertion that Temmerman and TCK needed to disclose the representation of Boston Bank and obtain written consent for continued representation. We agree that

---

[6] Undesignated rule references are to the Rules of Professional Conduct. Following a 2018 amendment, former rule 3-310 continues as part of current rule 1.7. For consistency with the parties, we use the former numbering.

7

rule 3-310(B)(1) required disclosure and that defendants' failure to disclose therefore could be considered the "concealment or suppression of a material fact."

Under rule 3-310(B)(1), disclosure is needed when the attorney has a specified relationship with another party or witness in the same matter with his or her client. An attorney-client relationship is a recognized legal and fiduciary relationship. (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 382.) It is undisputed that Temmerman and TCK had an attorney-client relationship with Boston Bank.

We acknowledge that, when Boston Bank first became trustee, there was no actual adversity between Boston Bank and Pomer. But rule 3-310(B)(1), unlike rule 3-310(C)(3), requires no adversity for its application, instead drawing a hard line requiring disclosure when an attorney has certain relationships with different parties in the same matter. Imposing a strict disclosure rule in such an instance is appropriate because "[c]onflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his own interests." (*People v. Bonin* (1989) 47 Cal.3d 808, 835.)

Further, although rules 3-310(C)(1) and (2) pertain to representation of more than one client in the same matter, rule 3-310(B)(1) on its face does not require that the attorney *represent* both parties in the same matter; it applies to parties or witnesses in the same matter with which the attorney has a relationship, whether or not the relationship itself also arises from the same matter.

We note that rule 3-310(B)(1) does not necessarily preclude an attorney from representing a client in one matter while the client is a party in a separate matter with a different client. Written informed consent is the solution: "[T]he client can make a rational choice [citation], based upon full disclosures as to the risks of the representations, the potential conflicts involved, and the alternatives available as required by the particular circumstances." (*Sharp v. Next Entertainment Inc.* (2008)

8

163 Cal.App.4th 410, 430 [noting that the requirement of a writing "will 'impress upon [the] clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing' "].)

Temmerman and TCK rely on *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, in which the Supreme Court considered whether rule 3-310, and the correlated duty of loyalty, barred the Santa Clara County Counsel Attorneys Association from suing the County of Santa Clara in connection with a wage dispute. (*Id*. at pp. 532, 534, 546.) The case is inapt: the putative conflict involved a claim that the Association's members had "a legal, business, financial, or professional interest in the subject matter of the representation" (*id*. at p. 546) under rule 3-310(B)(4), not the representation of clients with potentially adverse interests under rule 3-310(B)(1), and the association and the county in their wage dispute did not have an attorney-client relationship. (See *id*. at p. 547, fn. omitted [distinguishing the ethical duty "to forgo a business opportunity or a potential client" from a requirement—"not . . . found in . . . rules 3-300 or 3-310"—that attorneys "forgo [their] statutory rights against a client to redress a legal injury"].)

The defendants' own evidence showed that they represented Pomer as of May 2009, and also began representing Boston Bank a few days later. Although they also presented evidence that Pomer agreed to the appointment of Boston Bank as trustee, they provided no evidence that they informed Pomer of their representation of Boston Bank or that Pomer (or the bank, for that matter) gave *informed* written consent.

Instead, Temmerman and TCK argued to the trial court, invoking "[t]he ACTEC Commentary" without seeking judicial notice of the same: "[A] lawyer who represents a corporate fiduciary in connection with the administration of a fiduciary estate or trust should not be treated as representing the fiduciary generally for all purposes of applying the professional rules of conduct with regard to a wholly unrelated matter, such as another estate or trust administration." But additional language in the commentary

9

provides a more nuanced view than respondents' characterization. (See The American College of Trust and Estate Counsel, The ACTEC Commentaries on the Model Rules of Professional Conduct (6th ed. 2023), Commentary on MRPC 1.7, at p. 108, <https://www.actec.org/wp-content/uploads/2023/08/ACTEC_Commentaries_6th_Rev.pdf> [as of Mar. 14, 2024], archived at <https://perma.cc/WQ57-Q4RP>.) The commentary specifically cautions: "A lawyer who is asked to represent a corporate or private professional fiduciary in connection with [an] estate or trust should consider discussing with the fiduciary the extent to which the representation might preclude the lawyer from representing an adverse party in an unrelated matter." (*Ibid.*) It also recommends that a lawyer "trying to keep open the possibility of such a future adverse representation on an unrelated matter . . . should ask the corporate or private professional fiduciary for a prospective waiver as to such representations." (*Ibid.*) And it confirms: "Where a lawyer is already representing another party adverse to the corporate or private professional fiduciary on an unrelated matter, it will be necessary for the lawyer to comply with [Model Rule of Professional Conduct] 1.7(b) as to both clients before undertaking to represent the corporate or private professional fiduciary." (*Ibid.*)

Even reading the commentary as Temmerman and TCK do, Pomer's dissatisfaction with Northern Bank made it reasonably foreseeable that his interests as beneficiary would again put him in conflict with a successor institutional trustee. Therefore, Temmerman and TCK failed to meet their initial burden on the fraudulent concealment cause of action as to their duty to disclose.

Nor have respondents met their initial burden to demonstrate that the required disclosure was not material. Although respondents argue that disclosure would not have deterred Pomer's "decision to push his mother to nominate Boston Bank," the only evidence they offer on this point was Pomer's desire for a fiduciary with whom respondents had a "good relationship." It hardly follows from Pomer's desire for a

trustee known to and presumably well disposed to his own counsel that he would have supported nomination of a trustee to whom his counsel owed a fiduciary duty.

As for intent, Temmerman and TCK argue only that Pomer "provided no facts or evidence to prove that [they] intended to defraud him." This assertion is insufficient for Temmerman and TCK to meet their initial burden of production on this element. "Summary judgment law in this state . . . continues to require a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, *supra*, 25 Cal.4th at p. 854, fn. omitted.) In other words, a moving defendant must affirmatively "produce evidence that the plaintiff cannot reasonably obtain evidence to support his or her claim." (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 891.)

The final element at issue is damages. Pomer alleged in his complaint that Boston Bank's fees were increased due to unnecessary delay and that Temmerman and TCK "facilitated the imposition of excessive fees." In their moving papers on summary judgment, Temmerman and TCK argued that Pomer did not sustain any damages from their representation of Boston Bank in other unrelated matters, and that the claim for damages is barred by collateral estoppel because the Santa Clara County Superior Court previously approved Boston Bank's actions as trustee and its fees.

Under the doctrine of collateral estoppel, or issue preclusion, a prior determination will be given conclusive effect in a later proceeding. (*People v. Strong* (2022) 13 Cal.5th 698, 715.) "[I]ssue preclusion bars relitigation of issues earlier decided," when (1) " 'the issue . . . to be precluded from relitigation' " is " 'identical to that decided in a former proceeding' "; (2) the issue was " 'actually litigated in the former proceeding' "; (3) it was " 'necessarily decided in the former proceeding' "; (4) the determination in the former proceeding was " 'final and on the merits' "; and (5) " 'the party against whom preclusion is sought [is] the same as, or in privity with, the party to the former proceeding.' " (*Id*. at p. 716.)

11

Temmerman and TCK provide evidence of a July 2015 "Order on Request for Allowance of Trustee's Fees and Costs re Third Account." In that order, although the probate court noted that Pomer had made a "general argument that the 'unnecessary delay' of Boston Bank had the effect of 'inflating its fees,' " the court found that Pomer had waived his objections to Boston Bank's petition for fees and costs by filing only a "Notice of Motion and Motion for Evidentiary Hearing"—without "any specific objection to the fees and costs"—six days later than the deadline the court had previously set for objections. The court acknowledged, however, its "duty to review all petitions that come before it." Despite the waiver of Pomer's objections, then, we understand the probate court performed that duty, " 'a duty *imposed by law* to inquire into the prudence of the trustee's administration.' " (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427; Prob. Code, § 17200, subds. (a), (b)(9).) After reviewing submitted billing statements and declarations from Boston Bank and its counsel, the court approved the requested trustee fees and costs in full, and approved counsel's fees, less "a handful of entries" the court determined "reflect[ed] time that [was] either not reasonable or not necessary."

The probate court thus determined the reasonable fees and costs to be paid Boston Bank and its counsel, largely in its favor, and the court's order spared the trusts the "handful" of attorney entries deemed unreasonable or unnecessary. "[T]he prior determination of an issue is conclusive in a subsequent suit . . . as to that issue and every matter which might have been urged to sustain or defeat its determination." (*Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724–725; see also *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1565–1566 ["an 'issue' includes any legal theory or factual matter which could have been asserted in support of or in opposition to the issue which was litigated"].) And "[u]nlike claim preclusion, issue preclusion can be invoked by one not a party to the first proceeding. The bar is asserted against a party who had a full and fair opportunity to litigate the issue in the first case but lost." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826.) As to damages, then,

Pomer is collaterally estopped from relitigating the reasonableness of Boston Bank's fees for the work it performed. Temmerman and TCK thus carried their initial burden to negate the element of damages.

Pomer's asserted right to disgorgement of fees from Temmerman and TCK does not raise a triable issue of material fact as to damages. Unlike compensatory damages, the equitable remedy of disgorgement is intended to "[reflect] not the harms the clients suffer from the tainted representation, but the decreased value of the representation itself." (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1153.) Disgorgement "deters attorney misconduct" and "prevents fiduciaries from profiting from their fiduciary breach and disloyalty." (*Ibid.*) Pomer, however, conceded in his complaint that damages are an element of a common law fraudulent concealment cause of action. (See *Graham*, *supra*, 226 Cal.App.4th at p. 606.) And he provides no authority for the proposition that the abstract possibility of an equitable claim to disgorgement exempts him from the legal necessity of proving damages for the sole cause of action he elected to maintain. Moreover, "[w]here an attorney's misrepresentation or concealment has caused the client no damage, disgorgement of fees is not warranted." (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1536 [causes of action for legal malpractice and breach of fiduciary duty]; see also *Frye v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23, 48 ["with respect to any claim for misrepresentation or concealment, there was no damage"].)

Pomer having failed to raise a triable issue of material fact as to damages, his arguments as to disgorgement do not salvage his fraudulent concealment cause of action. Accordingly, the trial court correctly granted the defendants' motion as to the fraudulent concealment cause of action. For the same reasons, we reject Pomer's claim that the trial court erred by denying his own motion.

## III. DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

13

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P. J.



_____
GROVER, J.




*Pomer v. Temmerman, Jr., et al.*
H050191