Filed 7/13/15

# IN THE SUPREME COURT OF CALIFORNIA

DKN HOLDINGS LLC,                                )
                                                 )
      Plaintiff and Appellant,         )           S218597
                                                 )
      v.                                )     Ct.App. 4/2 E055732, E056294
                                                 )
WADE FAERBER,                                    )          Riverside County
                                                 )    Super. Ct. No. RIC1109512
      Defendant and Respondent.         )
_____)

      We granted review to clarify a bedrock principle of contract law: Parties who are jointly and severally liable on an obligation may be sued in separate actions. Although long-standing case law has found separate actions permissible, the Court of Appeal here held that a second suit is barred after entry of judgment against one of the contracting parties. The court reasoned that a breach of contract invades a single primary right, and the plaintiff could not split its breach of contract cause of action into multiple claims. This reasoning was erroneous because joint and several liability does not implicate the "primary rights" doctrine.[1] Moreover, the facts here do not support preclusion. Although a breach of contract may constitute a single wrong, the plaintiff has separate breach of

---

[1]    Under the "primary rights" theory, a cause of action arises from the invasion of a primary right. Although different grounds for legal relief may be asserted under different theories, conduct that violates a single primary right gives rise to only one cause of action. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798 (*Boeken*).)

1

contract claims against each of the defendants alleged to be jointly and severally liable.

## I.  BACKGROUND

Acting on behalf of a company called Evolution Fitness, Roy Caputo, Wade Faerber, and Matthew Neel leased commercial space in a shopping center to operate a fitness club.[2]  Their 10-year lease with DKN Holdings LLC (DKN) provided that multiple parties who signed as lessors or lessees "shall have *joint and several* responsibility" to comply with the lease terms.  (Italics added.)  The parties do not dispute that Caputo, Faerber, and Neel were jointly and severally liable on this contract.

Caputo later sued DKN for fraud, breach of contract, unfair business practices, and breach of fiduciary duty (the *Caputo* action).  Among other things, he alleged DKN had failed to disclose that construction on a driveway into the shopping center would not begin for over a year and that state regulations prohibited cutting back vegetation that made the gym less visible.  Caputo sought damages and rescission of the lease.  DKN cross-complained for rent and other monies due.  Although the cross-complaint named all three lessees, it was served on Caputo alone.  Faerber and Neel were subsequently dismissed as cross-defendants.[3]  After a bench trial, the court rejected all of Caputo's claims and

---

[2]  Another owner, CDFT Limited Partnership, was named in the lease but is not a party to this action.

[3]  Although it was not previously disputed that these dismissals were *without* prejudice, Faerber now contends the action against him was abandoned and thus subject to dismissal *with* prejudice.  (Code Civ. Proc., § 581, subd. (d).)  This belated claim lacks merit.  DKN formally dismissed Faerber and Neel from the cross-complaint.  Over two years later, DKN filed an amended cross-complaint with a caption that listed Faerber and Neel along with Caputo.  When concerns were raised that the amendment would revive claims against these parties, DKN stipulated that Faerber and Neel "remain dismissed from this litigation."  As far as the record shows, the amended cross-complaint was never served on Faerber, nor, for that matter, did the court dismiss any claims against Faerber as abandoned.

2

awarded over $2.8 million on DKN's cross-complaint. Judgment was entered on June 20, 2011.[4]

Shortly before the statement of decision in the *Caputo* action was filed, DKN sued Faerber and Neel for breach of the lease.[5] Faerber demurred, arguing that, because DKN's rights under the lease had been adjudicated in the *Caputo* action, suit against Faerber was barred by the rule against splitting a cause of action. (See *Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 894.) In opposition, DKN argued California law permits separate actions against parties who are jointly and severally liable. The trial court sustained the demurrer without leave to amend and entered judgment for Faerber. The Court of Appeal affirmed.[6]

## II. DISCUSSION

The parties frame the issue here as a clash between two venerable doctrines, debating whether the rule of joint and several liability must yield to rules governing the preclusive effect of judgments. The characterization is inapt because the doctrines are separate. Neither need be subordinated to the other. While acknowledging that separate actions are permitted against joint and several obligors, the Court of Appeal held that when one of the actions has resulted in a final judgment on the merits, that judgment bars assertion of the same claims in

---

[4] DKN did not seek to add Faerber or Neel as additional judgment debtors. Under Code of Civil Procedure section 989, joint debtors who were named but not served may be ordered to show cause why they should not be bound by a judgment on the obligation. (*Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1840.) However, settled law holds that section 989 procedures are permissive, not mandatory. (*Brenelli*, at p. 1840) Failure to pursue this remedy does not extinguish the plaintiff's right to recover against joint and several obligors in a separate lawsuit. (*Melander v. Western Nat. Bank* (1913) 21 Cal.App. 462, 479-480.)

[5] Faerber allegedly agreed to indemnify Neel for any liability Neel incurred. The complaint's second cause of action asserts that this agreement makes Faerber liable to DKN for Neel's share of unpaid rent.

[6] In a separate appeal, the court also affirmed a postjudgment order dismissing Neel. That appeal is not before us.

3

any other action.  In other words, although separate suits on a contract are technically allowed, the lower court held only one can proceed to judgment if the suits allege the same claims.  Precedent provides no support for this conclusion.

As we explain, there is no conflict between the doctrines of claim preclusion and joint and several liability.  Parties who are jointly and severally liable on a contract may be sued in separate actions.  Judgment in the first action does not bar judgments in later actions, even when they allege the same claim of wrongdoing, as long as the suits are against *different parties*.

A.      *Parties Who Are Jointly and Severally Liable May Be Sued in Separate Actions.*

At common law, when multiple parties promised the same performance, they were presumed to be jointly obligated absent a clear indication otherwise. (*Farmers' Exchange Bank v. Morse* (1900) 129 Cal. 239, 243.)  Parties who are jointly liable are each responsible for their share of a total obligation.  When enforcement was sought, the common law rule required that *all* jointly liable parties be joined in a single suit that would determine the total amount of their shared liability.  (*Ibid*.; see *Harrison v. McCormick* (1886) 69 Cal. 616.)  This joinder requirement sometimes made enforcement difficult, if not impossible. (See 9 Corbin on Contracts (rev. ed. 2007) § 52.1, p. 279.)

California and nearly all other states have passed statutes to ameliorate the harshness of the common law's compulsory joinder rule.  (9 Corbin, *supra*, § 52.1, pp. 280-281.)  The typical solution was to convert "joint" obligations into "joint and several" obligations.  (*Id*., § 52.1, p. 281.)  A joint and several contract is considered to be a contract that is made both separately with each promisor and jointly with all the promisors.  (12 Williston on Contracts (4th ed. 2012) § 36:1, pp. 801-802.)  Parties to a joint and several contract are thus bound jointly, so that they are liable for the entire obligation, and severally, so that each may be sued separately for the entire loss.  (See *id*., § 36:1, p. 803.)  The change to joint and several liability allowed individual promisors to be sued for enforcement of a

4

contract without joining all copromisors. (9 Corbin, *supra*, § 52.1, p. 281.) To this end, Civil Code section 1659 provides, "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Similarly, Civil Code section 1660 states, "A promise, made in the singular number, but executed by several persons, is presumed to be joint and several."

It has long been settled that contracting parties who are severally liable, or subject to joint and several liability, may be sued in the same action *or in separate actions* at the plaintiff's option. (*Goff v. Ladd* (1911) 161 Cal. 257, 260; *Moreing v. Weber* (1906) 3 Cal.App. 14, 21-22.) The plaintiff "does not lose the right to the several liability of a several obligor until the obligation is fully satisfied," notwithstanding that he may have obtained a judgment against other severally liable obligors. (*Melander v. Western Nat. Bank*, *supra*, 21 Cal.App. at p. 475.) This principle was explored in some detail in *Williams v. Reed* (1952) 113 Cal.App.2d 195 (*Williams I*) and *Williams v. Reed* (1957) 48 Cal.2d 57 (*Williams II*).

In the *Williams* litigation, defendant Reed and three others promised to pay a debt totaling $40,000. (*Williams I*, *supra*, 113 Cal.App.2d at p. 197.) After they defaulted, Reed entered a separate agreement promising to pay $35,000 of the debt. (*Id*. at pp. 197-199.) He failed to pay, and the creditor obtained a judgment against him for the $35,000, plus interest. (*Id*. at p. 199.) When Reed failed to pay that judgment as well, the creditor sued Reed and his copromisors on the original notes. (*Ibid*.) The copromisors argued the action was barred because the creditor had not joined them in the initial suit against Reed and had obtained a judgment against Reed alone. (*Id*. at pp. 203-204.) The Court of Appeal rejected this argument. It explained that while *joint* obligors are indispensable parties and may not be sued separately, the same is not true when an obligation is *joint and several*. (*Id*. at p. 204.) "In such a case the judgment obtained against one is not a bar to an action against the remaining joint and several obligors. '*Nothing short of*

5

*satisfaction in some form constitutes a bar . . .*' [citation]." (*Ibid.*, italics added.) In later proceedings, we too concluded that the creditor was not required to join the co-promisors in its suit against Reed because their obligations on the promissory notes were joint and several. (*Williams II*, *supra*, 48 Cal.2d at pp. 64-65.) We explained that the judgment against Reed "add[ed] nothing to the picture" except insofar as it benefitted the copromisors by partially exhausting the creditor's rights against Reed. (*Id*. at p. 65.) That judgment did not preclude the subsequent action, we repeated, because " '[n]othing short of satisfaction in some form constitutes a bar' against an action against the comakers" of a promise. (*Id*. at p. 66.)[7]

The Court of Appeal here asserted our discussion of joint and several liability in *Williams II* was " 'wrong' and incorrectly state[d] the law" if it would permit "an obligee, such as DKN, to obtain separate judgments *in separate actions* against joint and several obligors, based on the same claims." The court erred. The principle it rejected is fundamental to the concept of joint and several liability and is set out in the Restatements of both Contracts and Judgments. The Restatement Second of Contracts states: "A judgment against one or more promisors does not discharge other promisors of the same performance unless

---

[7] The same rule applies to joint and several tortfeasors. " 'The general rule followed in America is that the liability of two or more persons who jointly engage in the commission of a tort is joint and several, and gives the same rights of action to the person injured as a joint and several contract. Consequently, a judgment recovered against one of two joint tort feasors, remaining unsatisfied, is no bar to an action against the other for the same tort.' [Citation.]" (*Grundel v. Union Iron Works* (1900) 127 Cal. 438, 440-441.) An injured party may therefore sue all those responsible together, or in separate actions, and may proceed to judgment against any or all of them until fully compensated for the injury. (*Cole v. Roebling Construction. Co.* (1909) 156 Cal. 443, 447-448.) "The well-settled rule is that no bar arises as to any of the wrongdoers until the injured party has received satisfaction, or what in law is deemed its equivalent, and a judgment against one wrongdoer which remains wholly unsatisfied is not such satisfaction." (*Id*. at p. 449.)

joinder of the other promisors is required by the rule stated in § 290."**8** (Rest.2d, Contracts, § 292.) An official comment explains the historical development of the rule: "Modern procedural reforms and statutes relating to joint obligations have eliminated the foundations on which the all-or-none rule [of compulsory joinder] rested. In most States joinder of promisors of the same performance is permitted but not required, and judgment against one does not bar action against his co-obligor, whether there is a joint duty or several duties or both." (*Id*., § 291, com. c, p. 418.)

Similarly, the Restatement Second of Judgments provides that a "judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." (Rest.2d, Judgments, § 49.) The injured party has separate claims against each obligor, regardless of whether the obligation arises from a tort or breach of contract. (*Id*., § 49, com. a, p. 34.) The injured party may not " 'split' " his claim against a single obligor or present it in successive actions, and "[i]f he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued." (*Ibid*.) "But the claim against *others* who are liable for the same harm is regarded as separate. *Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor*." (*Ibid*., italics added.) While the injured party ordinarily may not relitigate issues decided against him in the first action (*id*., § 49, com. a, p. 35; see *post*, at pp. 13-14), "the rendition of the judgment in the first action does not terminate the claims against other persons who may be liable for the loss in question." (Rest.2d, Judgments, § 49, com. a, p. 35.) Indeed, because the judgment confirms the injured party's right to recovery on the obligation, it would be anomalous to hold that the legal

---

**8**    Section 290 describes the compulsory joinder rule for joint contracts. (Rest.2d, Contracts, § 290.)

7

confirmation of one obligor's liability should limit or extinguish the liability of other obligors. (*Ibid.*)

Applying joint and several liability principles, DKN's suit against Faerber was clearly permissible. Because Faerber, Caputo, and Neel were jointly and severally liable on the lease, DKN had separate claims against each and was entitled to pursue the claims in separate actions. (*Williams II*, *supra*, 48 Cal.2d at pp. 64-65; *Goff v. Ladd*, *supra*, 161 Cal. at p. 260.) Furthermore, the judgment DKN obtained in the *Caputo* action did not bar its right to seek recovery from Faerber and Neel later. (See Rest.2d, Judgments, § 49, com. b, p. 36.) Although the original judgment conclusively resolves DKN's rights against Caputo, and may bear upon the total amount DKN is entitled to recover for breach of the lease from all obligors (see *post*, at p. 14), it does not bar DKN from suing Caputo's copromisors. Only a satisfaction of the obligation would do so. (See *Williams II*, at p. 66.) Here, the judgment remained unpaid, and a separate suit was permissible.

Faerber protests that allowing separate suits against obligors is inefficient because it subjects the parties, witnesses, and courts to multiple proceedings on the same matter. This objection goes to the very nature of several liability, however, and the Legislature implicitly rejected it in adopting the presumption that contractual obligations are joint and several. (See Civ. Code, §§ 1659-1660.) Faerber is really insisting on a return to the old rule of joint liability, which held that contractual obligations had to be enforced in a single action. If an obligor could not be joined, because he was outside the court's jurisdiction, for example, the plaintiff forfeited the right to recover against him. (Rest.2d, Judgments, § 49, com. a, p. 35.) As noted, these harsh consequences led to a liberalization of the rule. (See *ante*, at pp. 4-5.)

B.      *Separate Actions Against Joint and Several Obligors Are Not Barred.*

The long-settled law of joint and several liability should have made this an easy case. However, the courts below perceived a conflict with the law governing

8

the preclusive effect of judgments. The Court of Appeal reasoned that, regardless of whether joint and several liability rules permit separate actions, once "a final judgment on the merits has been rendered in one action against a joint and several obligor, res judicata will bar the assertion of identical claims against other joint and several obligors, in a subsequent action, by parties bound by the judgment in the prior action." In other words, under the Court of Appeal's view, actions against separate obligors are in a race to judgment, and a final judgment against one obligor precludes the injured party from pursuing redress from any other obligor, even though the obligation is nominally joint and several. This interpretation runs counter to the essential principles that parties have a duty to meet their contractual obligations and that those injured by a breach have a right to be made whole. The perceived conflict is a mirage. In reality, the res judicata, or preclusion, doctrine operates in harmony with joint and several liability principles because it only bars repeated claims for the same relief *between the same parties*.

In fairness to the Court of Appeal, our terminology in discussing the preclusive effect of judgments has been inconsistent and may have caused some confusion. We have frequently used "res judicata" as an umbrella term encompassing both claim preclusion and issue preclusion, which we described as two separate "aspects" of an overarching doctrine. (E.g., *Boeken*, *supra*, 48 Cal.4th at p. 797; *Teitelbaum Furs, Inc. v. Dominion* (1962) 58 Cal.2d 601, 604 (*Teitelbaum Furs*).) Claim preclusion, the " ' "primary aspect" ' " of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. (*Boeken*, at p. 797.) Issue preclusion, the " ' "secondary aspect" ' " historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit. (*Ibid*.)

We have sometimes described "res judicata" as synonymous with claim preclusion, while reserving the term "collateral estoppel" for issue preclusion. (See *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) On occasion, however, we have used the term "res judicata" more broadly, even in a

9

case involving only *issue* preclusion, or collateral estoppel.  (See *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813.)  We are not the only court to sometimes use the term "res judicata" with imprecision.  (See, e.g., *Migra v. Warren City School Dist. Bd. of Ed.* (1984) 465 U.S. 75, 77, fn. 1.)  To avoid future confusion, we will follow the example of other courts and use the terms "claim preclusion" to describe the primary aspect of the res judicata doctrine and "issue preclusion" to encompass the notion of collateral estoppel.  (See *ibid*.)  It is important to distinguish these two types of preclusion because they have different requirements.

*Claim preclusion* "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen*, *supra*, 28 Cal.4th at p. 896.)  Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.  (*Ibid*.; *In re Crow* (1971) 4 Cal.3d 613, 622; *Teitelbaum Furs*, *supra*, 58 Cal.2d at p. 604.)  If claim preclusion is established, it operates to bar relitigation of the claim altogether.

*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action.  (*Mycogen*, *supra*, 28 Cal.4th at p. 896.)  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. (*Boeken*, *supra*, 48 Cal.4th at p. 797.)  There is a limit to the reach of issue preclusion, however.  In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party.  (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at p. 812.)

Issue preclusion differs from claim preclusion in two ways.  First, issue preclusion does not bar entire causes of action.  Instead, it prevents relitigation of previously decided issues.  Second, unlike claim preclusion, issue preclusion can be raised by one who was not a party or privy in the first suit.  (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.)  "Only the party *against whom* the

10

doctrine is invoked must be bound by the prior proceeding. [Citations.]" (*Ibid*.) In summary, issue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *Vandenberg*, at p. 828; *Teitelbaum Furs*, *supra*, 58 Cal.2d at p. 604.)

When the distinct requirements of issue and claim preclusion are considered, resolution of this appeal is straightforward. After DKN secured a final judgment on the merits against Caputo, the judgment remained unpaid, and DKN sued Faerber and Neel. These defendants had been named but were never served in the *Caputo* action. Faerber demurred. He urged that the *claim* against him was barred because DKN had successfully sued Caputo on that same claim. This argument led both courts below astray. After discussing the "primary rights" theory (see, e.g., *Boeken*, *supra*, 48 Cal.4th at p. 797), the Court of Appeal determined the present suit seeks redress for the same wrong as the *Caputo* action and thus involves the same cause of action for purposes of claim preclusion. With the "same cause of action" requirement satisfied, and with no dispute that the *Caputo* action yielded a final judgment on the merits, the court held the present suit was barred even though Faerber was not a party in *Caputo*.

The Court of Appeal's analysis was flawed. As discussed, claim preclusion applies only to the relitigation of the same cause of action *between the same parties* or those in privity with them. (*Teitelbaum Furs*, *supra*, 58 Cal.2d at p. 604; *Rice v. Crow* (2000) 81 Cal.App.4th 725, 734.) Whether DKN's two lawsuits involve the same primary right is beside the point. (See *Rice*, at p. 736.) Claim preclusion does not bar DKN from suing Faerber because Faerber is not "the same party" who defended the cause of action in the first suit, nor was he in privity with Caputo based on their business partnership or cosigner status. (See *Dillard v. McKnight* (1949) 34 Cal.2d 209, 214 [business partners are not in privity for purposes of preclusion].)

11

This conclusion is entirely consistent with the settled rule that joint and several obligors may be sued in separate actions. (See *Williams II*, *supra*, 48 Cal.2d at p. 66.) Claim preclusion does not bar subsequent suits against co-obligors if they were not parties to the original litigation. In this context, a party "is one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment.' " (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at p. 811.) Faerber has never contended that he and the other lessees should be considered the same party.

Nor does joint and several liability put co-obligors in privity with each other. As applied to questions of preclusion, privity requires the sharing of "an identity or community of interest," with "adequate representation" of that interest in the first suit, and circumstances such that the nonparty "should reasonably have expected to be bound" by the first suit. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875.) A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's " ' "virtual representative" ' " in the first action. (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 150.) Joint and several liability alone does not create such a closely aligned interest between co-obligors. The liability of each joint and several obligor is separate and independent, not vicarious or derivative. (See *id*. at p. 154, citing *Tavery v. U.S.* (10th Cir. 1990) 897 F.2d 1032, 1033.) Thus, joint and several obligors are not considered to be in privity for purposes of issue or claim preclusion. (*Gottlieb*, at p. 154.)[9]

The Court of Appeal recognized that Faerber was not a party in the *Caputo* action. It erred, however, when it conflated claim preclusion, which requires

---

[9]     Questions about whether a relationship is sufficient to support privity typically arise in the context of *issue* preclusion, to prevent a party from contesting an issue that was decided against its alleged privy in a previous suit. (See, e.g., *Clemmer v. Hartford Insurance Co.*, *supra*, 22 Cal.3d at p. 875; *Gottlieb v. Kest*, *supra*, 141 Cal.App.4th at p. 150.) We have encountered no other case in which a party asserts *claim* preclusion based on a prior judgment *against* its alleged privy.

identity of parties, and issue preclusion, which does not. DKN explicitly argued that " 'the defense of res judicata is available only *when both the cause of action and the parties are the same*,' " quoting 4 Witkin, California Procedure (5th ed. 2008) Pleading, section 65, page 124. The court rejected this passage from Witkin as "an incorrect statement of the law" because it believed "only the party *against whom* res judicata is invoked must have been a party to the prior action and bound by the judgment in that action." The court cited *Arias v. Superior Court* (2009) 46 Cal.4th 969, 985 for this proposition. The cited portion of *Arias* quotes this language from *Vandenberg v. Superior Court*, *supra*, 21 Cal.4th at page 828. Both *Arias* and *Vandenberg* were discussing the requirements of *issue preclusion*, however, not claim preclusion. The difference is important.

Unlike claim preclusion, issue preclusion can be invoked by one not a party to the first proceeding. The bar is asserted against a party who had a full and fair opportunity to litigate the issue in the first case but lost. (See *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 327-329.) The point is that, once an issue has been finally decided *against* such a party, that party should not be allowed to relitigate the same issue in a new lawsuit. (*Blonder-Tongue v. University Foundation* (1971) 402 U.S. 313, 324-325 (*Blonder-Tongue*); see *Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 985.) Issue preclusion operates "as a shield against one who was a party to the prior action to prevent" that party from relitigating an issue already settled in the previous case. (*Rice v. Crow*, *supra*, 81 Cal.App.4th at p. 735.)[10]

---

**10**     At common law, only one who was a party or in privity with a party in the first action could assert the bar of issue or claim preclusion. (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at pp. 810-811.) The cases required "mutuality of estoppel," which meant that parties could only take advantage of an earlier judgment if that judgment would have bound *them*, had it been decided differently. (*Id*. at p. 811; see *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at p. 326.) In the landmark case *Bernhard v. Bank of America*, we repudiated the mutuality rule for issue preclusion and held that only the party *against whom* the binding effect of the previous judgment was asserted had to be a party or privy in that prior

The present case does not involve these concerns. Faerber is asserting that claim preclusion bars DKN's entire suit against him. It does not. Issue preclusion, however, can indeed bind DKN to the resolution of issues decided in the *Caputo* action. For example, Faerber may raise issue preclusion as a shield to prevent relitigation of the rent due, or other losses caused by breach of the lease. DKN has apparently had a full and fair opportunity to litigate the extent of those damages. In separate actions against joint and several obligors, "adjudication of the amount of the loss [in one action] . . . has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question." (Rest.2d, Judgments, § 50, com. d, p. 43.) But issue preclusion cannot be used to prohibit DKN from seeking redress from a different obligor just because it has *prevailed* against a different party in the first suit.

The cases Faerber relies on do not suggest otherwise. They involve *derivative* liability, not joint and several liability. For example, in *Lippert v. Bailey* (1966) 241 Cal.App.2d 376, the plaintiff was precluded from suing insurance agents after he settled with the insurance company for the same loss. Because these agents had no liability apart from that of their principal (*id.* at p. 382), the defendants were in privity with the insurance company, and were thus effectively the same parties for purposes of preclusion. When a defendant's liability is entirely derivative from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one. (See *Richard B. LeVine, Inc. v. Higashi* (2005) 131

proceeding. (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at pp. 812-813; see *Blonder-Tongue*, *supra*, 402 U.S. at p. 324 [noting that *Bernhard* led many state and federal courts to reject the mutuality requirement when parties sought to relitigate issues they had previously lost].)

14

Cal.App.4th 566, 576-579; *Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 557-558.)  The nature of derivative liability so closely aligns the separate defendants' interests that they are treated as identical parties.  (*Richard B. LeVine, Inc.*, at p. 578.)  Derivative liability supporting preclusion has been found between a corporation and its employees (*Sartor v. Superior Court* (1982) 136 Cal.App.3d 322, 328; *Lippert*, at p. 382), a general contractor and subcontractors (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 757), an association of securities dealers and member agents (*Brinton*, at pp. 557-558), and among alleged coconspirators (*Richard B. LeVine, Inc.*, at p. 579).

None of these derivative liability cases involves joint and several liability. No cited decision extends their holdings to parties jointly and severally liable on a contract.  The concepts of joint and several liability and derivative liability are not coextensive.  Each joint and several obligor is separately responsible for breach of the contract; the basis of each one's liability is independent, although all have contributed to the same loss.  (*Gottlieb v. Kest*, *supra*, 141 Cal.App.4th at p. 154; *Tavery v. U.S.*, *supra*, 897 F.2d at p. 1033; cf. *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 587 [explaining that joint and several liability among concurrent tortfeasors does not rest on notions of vicarious liability, but instead describes each tortfeasor's liability for injury caused by his own negligence].)  Faerber cites no case holding that joint and several liability under a contract is a *derivative* liability.  We will not extend the concepts of joint and several liability and preclusion to that degree.

Finally, Faerber complains these long-settled rules confer an unfair procedural advantage because plaintiffs may "divide and conquer," suing each obligor separately and preventing co-obligors from mounting a unified defense. This concern is largely answered by the modern doctrine of issue preclusion.  As discussed, even when multiple suits are permissible, the plaintiff may not relitigate issues decided against him in the first action, including issues related to damages. (Rest.2d, Judgments, § 49, com. a, p. 35; see *ante*, at pp. 13-14.)  Yet all defenses

remain available to a co-obligor in a later suit, including those rejected in the first suit, because the co-obligor was not a party to the earlier proceeding and thus is not bound by it. (See *Hansberry v. Lee* (1940) 311 U.S. 32, 40.) Moreover, the rewards of a divide and conquer trial strategy are debatable. As a comment to the Restatement Second of Judgments observes, "Even when not obliged to do so, the claimant usually is under strong inducement to effectuate joinder of multiple obligors because it reduces his litigating costs and may impel the defendants to contribute to the proofs against each other." (Rest.2d, Judgments, § 49, com. a, p. 35.)

## III. DISPOSITION

The decision of the Court of Appeal is reversed and the case remanded. The matter shall be returned to the trial court with directions to set aside its order sustaining the demurrer.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** DKN Holdings LLC v. Faerber

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 225 Cal.App.4th 1115
**Rehearing Granted**


_____

**Opinion No.** S218597
**Date Filed:** July 13, 2015

_____

**Court:** Superior
**County:** Riverside
**Judge:** John W. Vineyard


_____

**Counsel:**

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe, Kristin F. Godeke and Paula M. Harrelson for Plaintiff and Appellant.

Callahan & Blaine, Daniel J. Callahan, Edward Susolik, Michael S. LeBoff and Jill A. Thomas for Defendant and Respondent.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael G. Dawe
Prenovost, Normandin, Bergh & Dawe
2122 North Broadway, Suite 200
Santa Ana, CA 92706-2614
(714) 547-2444

Michael S. LeBoff
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
(714) 241-4444