Filed 6/18/25  Liebovich v. Tobin CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MATTHEW LIEBOVICH et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>DIANE JANICE TOBIN et al., Individually and as Trustees, etc.,<br><br>    Defendants and Respondents. | B333285<br><br>(Los Angeles County Super. Ct. No. BP138119) |

APPEAL from an order of the Superior Court of Los Angeles County, Jonathan L. Rosenbloom, Judge.  Affirmed.

Law Office of Stewart Levin, Stewart Levin; Joseph S. Socher, Esq., and Joseph S. Socher for Plaintiffs and Appellants.

Carico Glowacki Macdonald Kil & Benz, Christopher D. Carico and William G. Benz for Defendants and Respondents.

Matthew Liebovich, individually and as successor-in-interest to Joshua Liebovich; Andrew Liebovich; and Esther Liebovich (appellants or Bruce's children) appeal from a final order entered following dismissal of appellants' petition, filed in probate court, alleging financial elder abuse of appellants' grandparents, Theodore and Shirley Liebovich. The petition alleged appellants' aunts, Lori Gayle Robin and Diane Janice Tobin (respondents), exploited Theodore and Shirley and caused them to disinherit appellants.[1] The trial court sustained respondents' demurrer to the elder abuse petition without leave to amend on the grounds of collateral estoppel and lack of standing. We affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

**The family**

Theodore and Shirley Liebovich, each born in the 1920's, married and had four children—Diane Janice Tobin, Lori Gayle Robin, Stuart Jerome Liebovich, and Bruce Allen Liebovich. Bruce had four children—Esther, Matthew, Andrew and Joshua, who are appellants in this matter.

**Initial estate planning—from 1984 through 2011**

In May 1984, Theodore and Shirley executed the Liebovich 1984 Trust. (trust). Theodore and Shirley thereafter jointly

---

[1]   Because many of the persons involved in this case share the same last name, we will use first names for clarity. No disrespect is intended.

[2]   Most of this background is taken from our two prior nonpublished opinions in this matter. (*Liebovich v. Tobin* (Sept. 5, 2019, B292177) (*Liebovich I*) and *Liebovich v. Tobin* (Aug. 26, 2021, B306184) (*Liebovich II*).

executed multiple amendments to the trust, the last of which was the Sixth Amendment to and Complete Restatement of Trust (the sixth amendment).

The sixth amendment was executed on July 28, 2006. It named Theodore and Shirley as both the trustors and the initial trustees. The amendment directed each of the spouses could alter, modify and amend the trust during their lifetimes only if they acted jointly. After they both died, specified sums would be donated to various charities, with the remainder of the estate to be split equally among their four children. If one of their children predeceased them, that child's children would get their deceased child's share.

At the same time Theodore and Shirley executed the sixth amendment, Shirley executed a "Durable Power of Attorney (Limited)" (power of attorney). In the power of attorney, Shirley appointed Theodore as her attorney-in-fact with regard to certain specified actions. The power of attorney did not expressly authorize Theodore to amend the beneficiaries of the trust or to waive legal notice of legal proceedings.

Signing for himself and, on the basis of the power of attorney, for Shirley, Theodore executed four more amendments to the trust (the seventh through 10th amendments) in October 2006, April 2007, April 2010, and December 2011. These amendments acknowledged Bruce's death and modified the distribution of trust assets upon Theodore and Shirley's deaths. Pursuant to the amendments, after specified sums were donated to various charities, Stuart would receive a $500 monthly stipend, and more if needed for his support, health, maintenance and education, and Diane and Lori would split the remainder equally. So modified, Bruce's children received no inheritance.

**2013 petition to reform the sixth amendment and power of attorney**

In December 2012, Theodore filed a petition to modify and reform the sixth amendment and Shirley's power of attorney. Specifically, he sought (1) to amend the sixth amendment to add language that it "'may be modified or revoked by an attorney-in-fact under a power of attorney,'" (2) to amend the power of attorney to add language that "Theodore . . . shall have the authority as [Shirley's] attorney-in-fact to designate or change the designation of beneficiaries to receive any property, benefit, or contract right on [Shirley's] death," and (3) to make those amendments retroactive, thereby validating the seventh through 10th amendments. The basis for the motion was scrivener's error. Shirley had expressed to the couple's estate planning lawyer during a meeting in June 2006, an unequivocal desire and intent that Theodore be empowered to amend the trust as her attorney-in-fact. The lawyer intended to add language to the sixth amendment and power of attorney to effectuate Shirley's desire but erred in omitting that language.

Theodore served the petition on Lori, Diane, Stuart and Bruce's four children. Theodore served Bruce's four children by mailing notices to each of them at their mother's home address. At that time, only Joshua lived at that address, and he was 14 years old. Theodore did not serve the petition on Shirley. Theodore served the probate court's notice of hearing in the same manner.

Days before the hearing, Theodore signed a waiver of notice purporting to waive notice of the hearing on Shirley. He signed the petition as Shirley's attorney-in-fact.

4

On April 10, 2013, the probate court issued a written order granting Theodore's petition reforming the sixth amendment and power of attorney as requested and retroactively validating the seventh through 10th amendments (the 2013 order).

**Subsequent amendments and postamendment events**

Relying on the power of attorney, Theodore executed four more amendments to the 1984 trust (the 11th through 14th amendments) before he passed away on January 7, 2014.

Shirley passed away on April 17, 2017.

The successor trustees of the 1984 trust were Diane, Lori, and Marc Chopp, a family friend. On August 23, 2017, the trustees sent notice of Shirley's death to each of Bruce's children. Pursuant to the 14th amendment, each child was entitled to $25,000 if they signed a release agreeing not to contest the 1984 trust. Each child was also entitled to $5,000 to hire "skilled legal counsel to advise him or her" whether to accept their inheritance in exchange for the release. Bruce's children each cashed the $5,000 checks, but declined to sign the release.

**Motion to vacate 2013 order and first appeal**

On March 22, 2018, Bruce's children filed a motion to vacate the 2013 order as void and named the trustees as respondents. Through declarations, they asserted Theodore's service of process at their mother's house was improper. They also asserted they had not objected to the 2013 order because none of them knew of it until Shirley's death in 2017, when they heard one of their cousins inherited money from Shirley. The declarations also asserted each of Bruce's children's personal belief that Lori and Diane manipulated Theodore and subsequently "hid" Shirley from them, and it was not in their

grandparents' nature to deny them an inheritance. After briefing and a hearing, the probate court denied the motion to vacate.

Bruce's children appealed the denial of their motion to vacate the 2013 order. (*Liebovich I, supra*, B292177.) This court concluded the probate court erred in denying the motion to vacate. Although we agreed with the probate court that Bruce's children were not entitled to notice, we concluded the order was void on its face due to lack of notice to Shirley. Because Bruce's children had sought relief under Code of Civil Procedure section 473, subdivision (d), which provides for discretionary relief, we remanded the matter to the probate court and directed it to exercise its discretion and consider (1) whether Shirley's participation in the proceedings regarding the petition to reform the sixth amendment and power of attorney would have led to a different result and (2) whether Bruce's children had been diligent in bringing their motion to vacate.

**Remand and second appeal**

After the matter was remanded, the probate court issued an order asking for briefing on whether to exercise its discretion. In their memorandum of points and authorities in response to the court's briefing order, appellants argued the 2013 order was void, thus all subsequent amendments were invalidated as a matter of law because Shirley did not sign them. Appellants argued, "Financial Elder Abuse remedies are available as per the attached Petition, Exhibit 2." Appellants attached a complete copy of the financial elder abuse petition filed in this matter, thereby alleging the identical allegations as the petition that is the subject of this appeal.

The elder abuse petition, which was attached to the memorandum of points and authorities filed in connection with

6

the remand briefing, made allegations that "Aunts, the Respondents, [implemented] their plan to wrest the entire estate of Theodore and Shirley from their own brothers . . . ." They alleged the aunts, Diane and Lori, "control[led] and manipulate[d] Theodore, while letting nature take its course with Shirley, who had Alzheimer's and was mentally incompetent directly after signing the subject Sixth Amendment and Restatement of Trust." Appellants included allegations the aunts "isolated the Trustors from their own grandchildren." Appellants alleged when it came to estate planning, "Lori and Diane were in control, not Theodore and certainly not Shirley."

As to the second factor, whether appellants were diligent in bringing their motion to set aside the 2013 order, appellants argued the defense of laches should not apply as there was no time limit on the motion they made.

Respondents filed an opposition to appellants' memorandum.

After briefing and oral arguments, on December 18, 2019, the probate court issued an order declining to vacate the 2013 order. The court noted it had been directed to exercise its discretion to consider "(1) whether Shirley's participation in the proceedings regarding the petition to reform the Sixth Amendment and power of attorney would have led to a different result . . . requiring showing of 'a meritorious case' to obtain equitable relief from a judgment under Code of Civil Procedure section 473 . . . and (2) whether [appellants] were diligent in bringing their motion to dismiss . . . ."

As to the second issue, the court found appellants had notice of the 2013 proceedings in early 2014 when one of their attorneys requested and received certain documents. At that

7

time Shirley was still living, and the trust was therefore revocable. Despite notice of the status of the trust, no petitions were filed at that time. The court concluded, "As the [appellants] received copies of the Trust and its Amendments and failed to challenge them until almost four years after Shirley's death, the trustees were deprived of the readiest means of proving Shirley's intent and was [*sic*] necessarily prejudiced thereby."

As to the question of whether Shirley's participation in the proceedings would have led to a different result, the court found, "Shirley's ready participation in the Sixth Amendment and signing of the [power of attorney] leads this court to the conclusion that Shirley was very aware of her role as Trustor. She was represented by an attorney who talked to her separately from her husband and she apparently understood the proposed terms of the trust and her responsibilities as Trustor. . . . Moreover, Shirley was not opposed to disinheriting the grandchildren as she did so in disinheriting her grandchild by her son Stuart. For the above stated reasons, the court finds that Shirley's participation in the petition to reform the Sixth Amendment and power of attorney would not have led to a different result."

The court therefore exercised its discretion to not overturn the 2013 order.

Appellants appealed, and on August 26, 2021, this court affirmed the order of the probate court declining to overturn the 2013 order. (*Liebovich II, supra*, B306184). We had "no doubt that the probate court acted well within its discretion in declining to vacate the void 2013 order." (*Id*. at p. *18.) We explained, "With regard to the first factor, the question was whether [appellants] could articulate a 'sufficiently meritorious' basis for

8

concluding that the probate court would not accept Shirley's lawyer's claim of a scrivener's error if the 2012 petition were litigated now." (*Ibid.*) In analyzing this question, the court analyzed the sworn testimony of Shirley's lawyer "attesting to Shirley's actual intent" and weighed it against "the inference proffered by [appellants] that Shirley must not have intended to allow Theodore to alter the Trust on her behalf because Theodore's decision to file the 2012 petition rather than have Shirley re-execute amended versions of the sixth amendment and power of attorney meant that Shirley's position must have been unfavorable to his." (*Ibid.*) We determined the probate court did not abuse its discretion in giving greater weight to the firsthand evidence. (*Id.* at p. *20.) We further determined the probate court did not abuse its discretion in concluding that appellants "were not reasonably diligent and that their lassitude prejudiced the trustees." (*Ibid.*)[3]

**The elder abuse petition in the present matter**

On February 11, 2020, during the pendency of *Liebovich II*, appellants filed the instant petition against respondents in their individual and cotrustee capacities, and against Chopp as cotrustee. The petition contains two causes of action: (1) for financial elder abuse and (2) for a constructive trust. Appellants alleged that starting in 2006, Theodore and Shirley suffered from mental limitations that restricted their ability to carry out normal activities and protect their rights, and that Lori and Diane deliberately sought to take advantage of their parents' vulnerabilities to their own ends. Appellants sought a

---

[3] We denied appellants' petition for rehearing on September 13, 2021. The California Supreme Court declined to hear appellants' petition for review on November 10, 2021.

9

declaration that the 2006 restatement and amendment of the 1984 Liebovich Trust is the only valid trust document, and sought to invalidate the seventh through 14th amendments to the trust.  The petition contained language assuming the 2013 order would be invalidated.[4]

On July 15, 2022, appellants filed a notice of withdrawal of their elder abuse petition and the claims against the trustees but maintained their financial elder abuse claims against respondents in their individual capacities.

**Respondents' demurrer to the financial elder abuse petition**

On March 20, 2023, respondents demurred to the elder abuse petition arguing it was barred by the preclusive effect of prior orders with respect to the seventh through 10th amendments, and appellants lacked standing with respect to the 11th through 14th amendments.

Appellants opposed the motion, arguing the claims in the petition were independent of the issues raised in the motion to vacate the 2013 order and that the 2013 order did not have a preclusive effect over the elder abuse claims.

The demurrer was heard on June 9, 2023, and taken under submission.  On July 31, 2023, the court issued a written order sustaining respondents' demurrer without leave to amend.

---

[4]     For example, the petition states, "This Petition presumes that the Probate court will invalidate April 2013 Order that validated Theodore's right to make amendments to the Trust on behalf of Shirley and validating Theodore's right to make certain amendments after 2006, based upon CCP 473(d), following Remittitur from the Appellate Court."

The court determined the issues already decided in the proceeding would bar appellants' claims under the doctrine of collateral estoppel.  The court held appellants "had opportunity to challenge, and did challenge, the 2013 Order already."  Along with that challenge, the validity of the seventh through tenth amendments was already decided.  Further, appellants "have not shown a financial or pecuniary interest in effectively reverting the Trust back to the tenth amendment."  The court concluded: "The Court sustains the demurrer as to both claims on the ground that, insofar they [*sic*] challenge the validity of the seventh through tenth amendments, the challenges are barred by collateral estoppel and, insofar as they challenge the later amendments, [appellants] fail to plead sufficient standing.  The Court does not believe these defects can be cured by amendment."

The court signed and entered a final order on February 1, 2024, denying appellants' petition with prejudice.  Appellants appealed.[5]

## DISCUSSION

### I.  Standard of review

We review a ruling sustaining a demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law.  (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740.)  "We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of

---

[5]     Appellants' notices of appeal were dated September 27 and September 28, 2023.  However, we treat the appeal as appealing from the February 1, 2024 order.  (Cal. Rules of Court, rule 8.104(d).)

contentions, deductions, or conclusions of law." (*Ibid.*) We may properly "'take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case and other cases.'" (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.)

We need not accept the trial court's reasons for sustaining the demurrer, "as it is the ruling, not the rationale, that is reviewable." (*Kan v. Guild Mortgage Co., supra*, 230 Cal.App.4th at p. 740.)

## II.     Res judicata and collateral estoppel

### A.     *Res judicata, or claim preclusion*

"The claim preclusion doctrine, formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.)  "Claim preclusion, the "'primary aspect'" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'" (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*Ibid.*)  "If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Ibid.*)

In determining whether two proceedings involve identical causes of action for the purposes of claim preclusion, "California courts have 'consistently applied the "primary rights" theory.'"

12

(*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).) For the purposes of claim preclusion, "The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . . advanced." (*Id.* at p. 798.) "'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief."'" (*Ibid.*) "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Ibid.*)

Claim preclusion also bars claims that could have been raised in the original suit. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 821 ["Res judicata bars 'not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit.'"].)

### B. *Collateral estoppel, or issue preclusion*

"Issue preclusion, the ""secondary aspect"" [of the res judicata doctrine] historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*Ibid.*)

"Issue preclusion differs from claim preclusion in two ways. First, issue preclusion does not bar entire causes of action. Instead, it prevents relitigation of previously decided issues. Second, unlike claim preclusion, issue preclusion can be raised by one who was not a party or privy in the first suit." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "In summary, issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)[6]

## III. Appellants' claims are barred under the doctrine of res judicata or claim preclusion

Appellants' financial elder abuse claims are barred by the doctrine of claim preclusion. As set forth in more detail below, appellants' financial elder abuse petition involves the same primary right as that involved in their prior petition to void the 2013 order. It also involves the same parties and resulted in a final judgment on the merits.

"Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) "If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Ibid.*)

There is no dispute that the parties to the 2019 proceeding are the same as the parties to the present matter. We discuss each of the remaining elements of claim preclusion below.

---

[6]   In keeping with the Supreme Court, we use the terms claim preclusion and issue preclusion in this opinion.

### A. *Same cause of action*
#### 1. *Primary rights analysis*

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken, supra,* 48 Cal.4th at p. 797.) "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Id.* at p. 798.) A cause of action is the "right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . . advanced." (*Ibid.*)

Appellants' initial petition in the probate court sought to vacate the 2013 order as void. Through the 2013 order, the probate court modified the power of attorney to permit Theodore to act as Shirley's attorney-in-fact to designate or change beneficiaries, and retroactively validated the seventh through 10th amendments, which collectively acknowledged Bruce's death and modified the trust to disinherit appellants.

Appellants' initial petition to vacate the 2013 order asserted faulty service of process. However, it also attached declarations, including the declaration of Matthew asserting "both of my aunts manipulated and controlled my elderly and ill grandfather to alter the life-long commitment of my grandparents . . . against [Theodore's] will, and certainly against the will of my grandmother Shirley."

While the Court of Appeal reversed on the ground of lack of service to Shirley, the Court of Appeal made it clear that upon remand the probate court was to determine "whether Shirley's participation in the proceedings regarding the petition to reform the Sixth Amendment and power of attorney would have led to a

15

different result." (*Liebovich I, supra*, B292177, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [requiring showing of a "meritorious case" to obtain equitable relief under Code Civ. Proc., § 473].)

Upon remand, appellants argued, among other things, that all trust amendments and orders based upon the 2013 order are void. In other words, appellants sought the same remedy they seek here—a declaration that the amendments divesting them of their inheritance are void. Appellants specifically raised the financial elder abuse claims, stating "Financial Elder Abuse remedies are available as per the attached Petition, Exhibit 2." Attached as exhibit 2 was the identical petition filed to initiate this matter.

As illustrated by the briefing described above, the question of whether Shirley's participation in the proceedings resulting in the 2013 order would have led to a different result necessarily led to appellants' allegations of financial elder abuse. In arguing the seventh through 10th amendments went against Shirley's will, appellants set forth their claims that both Shirley and Theodore were manipulated by Lori and Diane.[7] The probate court implicitly rejected these claims, finding "Shirley was very aware

---

[7]   Because appellants' allegations concerning elder abuse in the 2019 proceedings concerned both Shirley and Theodore, we reject appellants' suggestion that even if the prior litigation resolved all possible issues of elder abuse against Shirley, Theodore's own rights to be free from abuse were not addressed. On the contrary, they were raised and considered by the probate court in denying appellants' efforts to void the 2013 order. For this reason, we also need not address the parties' competing arguments concerning whether the allegations as to Theodore are barred by the statute of limitations.

16

of her role as Trustor" and was "represented by an attorney who talked to her separately from her husband and she apparently understood the proposed terms of the trust and her responsibilities as Trustor." These factual findings do not leave room for appellants' suggestion of financial elder abuse as to Shirley during the time preceding the 2013 order. Shirley's competent entrustment of her wishes to Theodore further undermines appellants' suggestion of elder abuse leading up to the 2013 order. As the court noted in its 2023 order sustaining respondents' demurrer in this matter, appellants "had opportunity to challenge, and did challenge, the 2013 Order already." Appellants had no financial interest in any later amendments not encompassed by the 2013 order.[8]

The probate court set forth in its order declining to void the 2013 order a brief history of the proceedings, noting that following remand "the attorneys were ordered to file Memorandum of Points and Authorities . . . and an order to show cause hearing was set . . . wherein oral arguments were presented." The court further noted it rendered its decision only after "[h]aving considered the parties' memorandums and oral arguments and reviewed the petitions, objections, [and] declarations . . . ." We credit the court's own affirmation that it read the documents presented to it, including appellants' proposed petition regarding financial elder abuse. Although

---

[8]     Appellants do not challenge the probate court's determination that they had no standing to challenge the 11th through 14th amendments due to their previous disinheritance. Instead, they argue they have standing to challenge the seventh through 10th amendments (which were retroactively validated in 2013) disinheriting them.

17

appellants' claims of financial elder abuse were not specifically mentioned in the order declining to void the 2013 order, we presume the probate court considered such claims, as they were before the court at the time. "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.). Per its own order, the probate court considered appellants' claims of financial elder abuse in reaching its decision declining to void the 2013 order.

Appellants argue that the 2019 order only addressed whether the 2013 order should have been set aside due to lack of notice to Shirley. However, appellants concede that within this topic, the probate court was required to consider whether Shirley's participation in the proceedings would have led to a different result. Appellants raised the issue of financial elder abuse, and set forth their allegations of abuse against both Shirley and Theodore, in an effort to convince the probate court that the result would have been different with Shirley's participation. The probate court expressly acknowledged its consideration of these claims in its order declining to void the 2013 order.

Appellants acknowledge they made reference to elder abuse in their postappeal memorandum of points and authorities before the probate court. Appellants argue the references to elder abuse were ancillary to the issues and arguments before the court in 2019. They argue these references to elder abuse do not mean the issue was "actually litigated" for the purposes of issue preclusion, or collateral estoppel. However, as set forth above, we rely on the doctrine of claim preclusion, or res judicata, to bar

18

appellants' current claims. Under the doctrine of claim preclusion, or res judicata, appellants are barred from asserting any claim that could have been litigated in the original suit. (*Thompson v. Ioane, supra*, 11 Cal.App.5th at p. 1191; *Torrey Pines Bank v. Superior Court, supra*, 216 Cal.App.3d at p. 821.) Appellants raised the elder abuse issue in arguing the 2013 order—including all the amendments it encompassed—should have been void. Although appellants raised the issue, they apparently failed to focus the court's attention on this issue or pursue it during the proceedings. This does not prevent application of the doctrine of claim preclusion, which applies to issues that were or could have been raised.

Appellants further contend the elder abuse issues could not have been litigated in the 2019 proceedings because those proceedings were limited to determining the intentions of Shirley at the time of the execution of the power of attorney in 2006 and whether Shirley's participation in 2013 would have made a substantial difference in the result.

The probate court was not limited to these questions in deciding the question of whether the 2013 order should be voided. This court directed the probate court to "consider, *among other relevant factors*, (1) whether Shirley's participation in the proceedings regarding the petition to reform the Sixth Amendment and power of attorney would have led to a different result . . . and (2) whether plaintiffs were diligent in bringing their motion to dismiss." (*Liebovich I, supra*, B292177, italics added.) Appellants raised the issue of elder abuse in arguing the 2013 should be considered void. They are precluded from raising it a second time against the same parties seeking the same result.

19

**2.** *The elder abuse claims are not "related" claims, but address the same primary right*

Appellants take the position that the elder abuse claims are related, but not the same. Appellants cite *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 26, for the proposition that "claims can be 'related' without being subject to a res judicata defense." (Capitalization and italics omitted.) Appellants seek to narrow the issue determined in the 2019 proceedings, arguing the 2013 order simply adjudicated whether Shirley had intended to include Theodore's ability to modify the beneficiaries of the trust when she initially executed the power of attorney and the sixth amendment. Appellants ignore that the later proceedings, in 2019, seeking to void the 2013 order, had a greater scope, including whether the notice irregularity was prejudicial. The question of whether Shirley's participation in the 2013 proceedings would have made a difference opened the proceedings to appellants' claims of elder abuse.

The cases appellants cite are distinguishable. *Estate of Dito* (2011) 198 Cal.App.4th 791 involved a widow's action against her deceased husband Frank's estate for her share of the estate. As part of the action, she claimed Frank's daughter (Barbara) by a previous marriage was liable for financial abuse of Frank. Following trial and appeal of that action, in which the widow was awarded a portion of Frank's estate, Barbara filed an action claiming the widow committed financial elder abuse against Frank. The widow argued that matter was res judicata, as she had won the prior action and was determined to be an omitted spouse. The *Dito* court held the primary right in the first action—whether the widow was an omitted spouse—was

20

different from the primary right in the second action—whether the widow committed financial elder abuse against Frank.  The court explained:  "The financial elder abuse allegations have no bearing upon the determination of whether [the widow was] an omitted spouse entitled to receive a share of Frank's estate pursuant to [law]." (*Id.* at p. 802.)  The court noted, "even if the elder abuse issue had been raised in the prior proceeding, it would have been improper for the court to rely on a determination that [the widow] committed financial elder abuse as the basis for denying her entitlement to a share of the estate." (*Ibid.*)

Here, in contrast, the allegations of financial elder abuse were relevant to the question of whether the 2013 order should be declared void.  Appellants properly raised these allegations in their efforts to convince the probate court to declare the 2013 order void.  Had the probate court been convinced that financial elder abuse took place, it would undoubtedly have affected the probate court's decision as to whether to void the 2013 order.  The allegations of elder abuse were relevant to the question of whether Shirley's participation in the proceedings would have changed the outcome.

*Hight v. Hight* (1977) 67 Cal.App.3d 498 is also distinguishable.  It presented one of the "'rare cases'" where "'a judgment may not be res judicata.'" (*Id.* at p. 503.)  Although a prior proceeding had been brought by the State of Colorado on behalf of the former wife against her former husband for child support, she was not present at the prior proceedings and was only a nominal party. (*Id.* at pp. 503–504.)  She had no control over the proceedings, had no part in the request for dismissal or failure to appeal, and her evidence as to her husband's

21

affirmative defense was never heard. (*Id.* at p. 505.) Such circumstances do not exist here, where appellants prosecuted the 2019 action to void the 2013 order, had every opportunity to present their arguments, and appealed the unfavorable decision.

*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171 (*Dunkin*), cited for the first time in appellants' reply brief, held that an earlier judgment dismissing a man's declaratory relief action to establish paternity did not preclude his later action for breach of contract brought against the woman who had promised him parentage, custody, and visitation rights to her child. The *Dunkin* court noted that in evaluating claim preclusion, "[w]e must compare the two actions, looking at the rights which are sought to be vindicated and the harm for which redress is claimed." (*Id.* at p. 182.) "'Reference must be made to the pleadings and proof in each case.'" (*Ibid.*)

Considering those factors, the *Dunkin* court found the action before it for breach of contract did not assert the same primary right as the appellant's prior action in family law court to establish paternity. The appellant previously sought to establish that he was the legal father of the child, and resolution of the enforceability of the contract was unnecessary to the court's judgment. Thus, the prior judgment did not bar the action at issue. (*Dunkin, supra*, 82 Cal.App.4th at p. 182.)

Here, in contrast, we have found appellants' petition for financial elder abuse asserts the same primary right as the 2019 proceedings to void the 2013 order. Through the present elder abuse allegations, appellants seek to void the 2013 order, as well as the seventh through 10th amendments to the trust. Appellants sought the same thing in 2019, through their motion to vacate the 2013 order. They had the opportunity to raise, and

22

did raise, their current allegations of financial elder abuse. Thus, this matter is distinguishable from *Dunkin*.

Similarly, in *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, the two actions at issue involved two separate primary rights. A public employee appealed disciplinary actions to the State Personnel Appeals Board, then later filed a civil suit for retaliation under the California Fair Employment and Housing Act (FEHA). The court explained, "The primary right protected by the state civil service system is the right to continued employment, while the primary right protected by FEHA is the right to be free from invidious discrimination and from retaliation for opposing discrimination." (*Id*. at p. 1483.)

Here, appellants have challenged the same order twice in the same court. They seek to vindicate the same primary right—to be free of the effects of trust amendments allegedly undertaken without the trustors' full awareness or agreement. Appellants raised the elder abuse claims in the prior proceeding, as they were relevant. Under the circumstances, the primary right at issue is not merely related, but identical.

**B.**   ***The 2019 order declining to void the 2013 order is final, valid, and on the merits***

The 2019 order declining to void the 2013 order was appealed, and affirmed, on appeal. The Supreme Court declined to consider it. It is therefore final, valid, and on the merits. As set forth above, appellants raised, and the probate court considered, appellants' claims of financial elder abuse during

23

those proceedings.  The probate court implicitly rejected those claims.[9]

## DISPOSITION

The order is affirmed.  Each side is to bear their own costs of appeal.


CHAVEZ, J.

We concur:


LUI, P. J.


RICHARDSON, J.

---

[9]     We reject appellants' arguments that the 2013 order was void, and a void order cannot be res judicata.  The probate court declined to void the 2013 order, and that decision was affirmed on appeal.  Further, the subject of the current matter was previously litigated during the 2019 proceedings, and there is no question that the 2019 order is valid and final.

24